# CHARLESTON.

CROSS VS. HOPKINS, ET ALS.

1873.
January
Term.

LUCIUS CROSS, PLAINTIFF AND APPELLANT *against*
BENJAMIN HALL, HAZELTINE HALL AND DAVID
O. HOPKINS, DEFENDANTS AND APPELLEES.

6    323
e54   130

Decided February 25th, 1873.

## SYLLABUS.

Whether a court, in any case, will undertake to coerce parties actually to commence or continue a partnership business for a series of years is a question very difficult of solution, upon which the authorities at hand are not satisfactory.

Though the late Board of Supervisors could not lawfully establish a ferry over any other water course within half a mile of another legally established ferry over it, the Board might establish a ferry over the Ohio River at any place.

L. is admitted to be the owner of a ferry, from a landing in the State of Ohio, across the Ohio River. It is alleged that the ferry was established according to the law of Ohio; but this is denied. B.

1873.
January
Term·

owned a ferry, from his land in this State, across the river, to L.'s landing. In consequence of the obstruction of a private road down the bank of the river to the water at B.'s ferry, he, for many years, used a landing above. B. seems to have regarded L.'s ferry as valid, and L. to have regarded the upper landing used by B. as that owned by him. They make a contract under seal, to enter into partnership to run the two ferries, to continue five years; and to build a boat for the purpose. L. with B.'s approbation builds the boat nearly to completion. Neither party does anything else toward putting the partnership in operation. After the contract between L. and B. was made, on D.'s application the Board of Supervisors granted him leave to establish a ferry at the upper landing mentioned, about two hundred yards above B.'s lawful landing. D. repaired a public road to near the water at this place, built a commodious boat and put and continues his ferry in operation. This renders L.'s and B.'s ferries of little value. About a year after the contract, while D. was running his ferry, B. sold his land and ferry to D. Under these circumstances a court of equity, will not at the instance of L. coerce B. to commence or continue the partnership business.

L.'s franchise, if he could and did have a legal ferry, can not be presumed to be of higher character or more extensive influence than a ferry established under the laws of this State. Whatever privilege L. may have, he can not exclude B. from running his ferry and competing for the transportation across the river, and the emoluments it may return.

The case is stated in the opinion of the Court.

*Smith* and *Knight* for Appellant.

*English* for Appellees.

HOFFMAN Judge.

Lucius Cross exhibited his bill against Benjamin Hall, Hazeltine Hall and David O. Hopkins.

Cross alleges that he has been for many years, and is, the owner of a ferry from the shore of the Ohio River, in the state of Ohio, near Racine, across the river to Graham's station landing, which was established by the law of Ohio. That Hall, on the 8th day of September 1870, was the owner of a ferry and ferry landing imme-

1873.
January
Term.

Cross
v.
Hopkins.
et als.

diately opposite Cross's ferry, from the shore of the Ohio River, in the state of West Virginia, in Graham Township, across the river to the Ohio shore ; and continued to be the owner thereof till the latter part of August, or the first of September 1871 : That on the 8th day of September 1871, Cross and Hall made a contract in writing, signed and sealed by them, which is as follows :

"Articles of agreement made and entered into by and between Lucius Cross of the county of Meigs and state of Ohio, of the one part, and Benjamin Hall of the county of Mason and State of West Virginia, of the other part, witnesset :

Article 1st. The parties above named agree to enter into a partnership to keep and run a ferry across the Ohio river, to and from the said parties ferry landing near Racine, to commence at the date of this instrument, and to continue five years from and after the 3rd day of June next, to be equal in expense and to share equally in the profits.

Article 2nd. We, the above named parties, further agree to build a good steam ferry boat and have the same furnished on or before the 3rd day of June next, for the special use of said ferry.

Article 3rd. The said Lucius Cross agreed to pay the said Benjamin Hall for one-half of the horse boat now used at the said ferry one hundred and forty-five dollars, in the following manner, viz : To be deducted from rents due the said Lucius Cross from said Benjamin Hall for two years rent, which becomes due on the 3rd day of June next.

Article 4th. The said Benjamin Hall, for the use of the said Lucius Cross's part of the above named horse boat, agrees to pay to said Lucius Cross one hundred dollars for two years rent, time to expire on the 3rd day of June, 1871, and did commence on the 3rd day of June, 1869.

In testimony whereof we, the said parties, have here-
unto set our hands and seals this 8th day of September,
1870.

LUCIUS CROSS.      [SEAL.]

BENJAMIN HALL.   [SEAL.]"

Stamp 50 cents.

Cross alleges that at the time of making the contract,
Hall, as the tenant of Cross, and the owner of his own
ferry, without the knowledge of Cross, had leased or sub-
let the ferries to James M. Edwards, for the term of one
year, to commence on the 1st day of October 1871 ; and
that Edwards, at the former time, took posession thereof,
and has had and still has it, as the tenant of Cross and
Hall as partners :   That Cross had a part, and procured
the residue of the timber and lumber necessary for the
building of a steam ferry boat, and, with his own means
and at his own expense, built the hull of a boat and
launched it, about the first of May 1871 ; but Cross and
Hall agreed to postpone the completion of the boat till
the fall :   That in August 1871, it was determined and
agreed that Cross should have the boat completed, and
he accordingly purchased a steam engine and machinery
and has nearly completed all the woodwork, and has it
ready to put the engine in and expects to have it read
to run in about ten days, at a cost of eighteen hundred
dollars :   That Hall has not paid any part of that su m
and is indebted to Cross for one half of it :

That about the first of September 1871, Hall, without
the consent of Cross, sold and conveyed his, Hall's, ferry
to Hopkins, who had actual notice of the contract be-
tween Cross and Hall and that it was in full force : That
Hopkins owns, or claims to own, an established ferry
from Racine across the Ohio River to Hall's landing,
and threatens to run Hall's ferry in connection with his
own : That if Hopkins succeeds in running his ferry in
connection with Hall's, it will render Cross's ferry of lit-
tle value; and, in connection with other matters stated,

1873.
January
Term.

Cross
v.
Hopkins.
et als.

will operate to a great extent, if not entirely, as a disso-
lution of the partnership between Cross and Hall, and
wholly deprive the former of any benefit of the contract:

That Hall on the 7th day of September 1871, for the
nominal consideration of one dollar, conveyed to his
daughter Hazeltine Hall, all his real estate in West Vir-
ginia, which conveyance was made for the purpose of
hindering, delaying and defrauding Cross in the collec-
tion of his demands; as Hall has no other real estate,
within the jurisdiction of the State, as far as Cross knows
or believes:

That he is advised that the sale by Hall to Hopkins,
as well as the sale and conveyance to Hazeltine Hall,
are fraudulent and ought to be set aside, as against Cross;
and that Hopkins ought not to be allowed to take pos-
session of, or run the ferry, in fraud of the right of Cross:

That Cross is further advised and charges that he is
entitled in equity, under the contract and matters stated,
to take possession of all these ferries and operate them.

He therefore prays that Hall may be enjoined from
transferring or delivering possession of his ferry and fer-
ryboats to Hopkins, and that Hopkins be enjoined from
taking possession of the partnership ferry and boat, and
from ferrying stock or other property from the West
Virginia shore within two miles of the Hall ferry; and
that Hall and Hopkins be enjoined from hindering, de-
laying, or preventing Cross from running the partner-
ship ferries in accordance with the terms of the agree-
ment; and that, if it should afterwards become necessa-
ry, a receiver be appointed to take charge of the ferries
and run and operate them, until the matters stated be
adjudicated and determined:

That Hall be decreed to pay to Cross one-half of the
cost and outlay expended and incurred by him, in the
construction of the steam ferry boat; and that the deed
from Hall to his daughter Hazeltine may be set aside

1873.
January
Term.

Cross
v.
Hopkins,
et als.

and held for naught, and the property thereby conveyed be held liable for whatever sum may be found due from Hall to Cross; and that the latter may have other, further and general relief.

On the 28th September 1871, the bill was sworn to.

An injunction was granted by a judge of the Circuit Court, as prayed for in the bill, on the Complainant, or some one for him, giving bond conditioned according law.

The injunction bond was given the 30th day of September 1871.

Hall answers that he is not advised whether the ferry claimed by Cross was regularly established by the laws of Ohio or not: that Cross has never in any respect complied with any of the stipulations of the contract; and has not paid any part of the expenses of the ferry, or demanded any of the profits arising from it; and, in short, has done no act which would indicate that he considered the contract in force, and the partnership continued : That Cross informed Hall that he had credited him with $100, for two years rent of Cross' landing, up to the 3rd of June 1871, which he expected to go on the horse boat: That Hall leased the ferry to Edwards, on his own account, and not as a partner with Cross :

That Hall did not on the 8th of September 1870, own or claim the landing from which Hopkins has run and proposes to run his ferry; but that Hall acquired a claim to the landing afterwards; and that Hopkins in order to quiet a title which he held under William Hopkins, purchased Hall's claim on Hopkins's landing, and also purchased the ferry landing established on the Robert Greer tract in 1852, which was owned by Hall; and he denies the allegation that Cross is to be damaged by Hopkins running his ferry from the land mentioned in the contract:

That Hall's deed to his daughter Hazeltine, was made in consideration that she should care and provide for her

1873.
January
Term.

Cross
v.
Hopkins.
et als.

older sister, who is *non compos mentis;* that neither this deed, nor that to Hopkins was made to hinder, delay or defraud creditors.

Hopkins answers that he does not know the length of time that Cross has owned the ferry, or whether it was legally established or not: That he knows nothing of the transactions between Cross and Hall, except that he saw the contract and thought it rescinded:

That the ferry landing claimed by Hall was on the Robert Greer tract, and the ferry established by Hopkins on the William Hopkins tract, adjoining and immediately above: That the dividing line between the tracts was the centre of the road passing to the river bank: That when Greer's ferry was established, the road from the top of the bank ran down the river some distance, and then quartering down the bank, but that road has long since washed away; and at the time Hopkins ferry was established, the road ran from where the dividing line struck the top of the bank, quartering up the river on the William Hopkins land; so that the point at which Hopkins's ferry was established was on a different tract of land, and at least two hundred yards further up the river than the landing claimed by Hall:

That on the 5th of October 1870, Hopkins purchased from William Hopkins, a ferry landing on this upper tract mentioned, on the West Virginia shore, opposite the town or Racine: That, under the provisions of Chapter 44 of the Code of West Virginia, Hopkins proceeded before the Board of Supervisors of Mason county and had a ferry established, from the landing last mentioned, across the Ohio river to Racine: That, at the time this ferry was established, there was no road down the river bank on the West Virginia side that a wagon could pass over, to the river, in safety; but that Hopkins constructed a good and permanent road down the bank; and that when it reached the river, it was firm

40

1873.
January
Term.

Cross
v.
Hopkins.
et als.

and dry : That Hopkins has constructed a suitable steam ferry-boat, at a cost of twenty-five hundred dollars, which has been duly inspected and licensed : That subsequent to the time when Hopkins purchased the land from William Hopkins, and long after the contract between Cross and Hall, the latter purchased from Alexander Lowther, who derived his title from William Hopkins, and set up a claim to Hopkins landing, and Hopkins purchased from Hall, not only his claim to the landing at which Hopkins' ferry was established, but all his right and title to the lower landing, where the Greer ferry was said to be established : That on the 8th day of September 1870, Hall neither owned nor claimed the landing at which Hopkins ferry is established : That Hopkins has not threatened to run a ferry from that landing, but has been running from the point at which his own ferry was established, above the county road.

At October rules the answers were filed, and at November rules a replication filed.

By the existing law, the material allegations of the bill, not controverted by the answers, are taken as true.

The allegation in the bill relative to Cross's building the boat for himself and Hall, as partners, which is denied in Hall answer, is substantially proved.

The affirmative allegatione in the answer, as far as they are material to the question now to be decided, are proved. It does not appear distinctly whether the defendant Hopkins acquired title to the land on which his ferry was established, from William Hopkins or Hall or either.

There are some other allegations in the pleadings that need not now be mentioned.

Notice having been given on the 4th of March 1871, the cause was heard by the judge of the Circuit Court on a motion for dissolution, and it was decreed that the injunction be dissolved.

From that decree Cross Appealed.

1873.
January
Term.

Cross
v.
Hopkins.
et als.

The first question proper to be considered now, is whether Cross can have a decree to enforce specifically the contract between himself and Hall, and put or keep the partnership in operation.

The court of equity, it is said, will enforce a preliminary agreement for a partnership, so far as to require the execution of articles for the formation and conduct of the association; Dreasy on Injunctions, 265-6 ; Collier on Partnership, secs. 2, 202 ;   And when the business contemplated has been commenced, the court, in a proper case, will compel the performance of specific determinate duties required by the articles, or restrain the commission of detrimental acts unlawful in themselves or prohibited by the articles.   But whether the court will undertake to coerce parties actually to commence or continue a partnership business for a series of years, is a question very difficult of solution.

Generally, a partnership undertaking demands the will and care, as well as the agreement and co-operation of the parties.   Dissention, enmity and dissatisfaction promise little success to a partnership enterprise.   An enforced inauguration of a partnership would be as futile as unpropitious.   The reluctant partner may not only withhold his countenance and industry from the furtherance of the object contemplated, but may, at his pleasure, sell his interest in the concern, and thus terminate the partnership.   Horton's appeal, 13 Penn. 67.

These considerations have brought modern jurists to the conclusion, that the court of equity should not generally, if at all, undertake to compel parties who have agreed with each other to do so, to establish or continue a partnership business, against their interest or inclination.   Skinner *vs.* Dayton and others, 19 Johns, 513— Opinion of Pratt, J. 537 ; Mason *vs.* Connell, 1 Wharton, 386 ; 3 Kent's Com. 53-4 ; 3 Parsons on Contracts, 366 ; Fry on Specific Performance sec. 961, notes.

1873.
January
Term.

Cross
v.
Hopkins.
et als.

But if the relief in question might be granted in any case, should it be granted in this?

As far as we may regard the conduct of the parties or the allegations of the bill, as an indication of what Cross claimed and was supposed to own, it does not appear that he, at the time the contract was made, had any such franchise as the parties assumed that he had. But this will be mentioned again hereafter.

A short time previous to the contract, Hall had leased his ferry and boat to Mathews, who enjoyed them, at least to the extent that Hall had done, as his tenant.

For years there was no road from the top of the river bank, down to the water opposite the Greer tract, at Hall's ferry. The public road had been established and constructed to the water opposite the Hopkins land, when Hopkins's ferry was established. Until a road should be made at private expense, or should be established and made by the public, Hall, or Cross and Hall, could not use Hall's landing to any considerable extent.

After the contract between Cross and Hall was made, Hopkins's ferry was established, the road was repaired to his landing, and a commodious steam ferry-boat built for the purpose, and regularly run from this landing to the town of Racine. With this competition, according to the bill and evidence, Cross's landing or ferry and Hall's ferry, united and used together, would probably prove unprofitable.

Cross never did anything towards putting the partnership enterprise in operation, except to build a ferry-boat, which he had not completed so as to be ready for use, when he brought the suit. Hall, from the beginning, seems to have been reckless and unscrupulous. He never did more toward the business than to agree with Cross that the latter might postpone the building of the ferry-boat, and afterwards that he should finish it in the manner then specified. He denies even this, but it

1873.
January
Term.

Cross
v.
Hopkins.
et als.

seems to be proven. He finally abandoned the whole affair.

Cross had an adequate remedy against Hall, at law. It is true he would encounter the same difficulty in the estimation of damage because of Hall's breach of the contract, that other plaintiffs do, in like cases, not relating to partnership. But, if the remedy were much more inconvenient than it is, it would seem greatly preferable to a proceeding in equity, which, under the circumstances detailed, would force this partnership into actual operation, to be impeded, embarrassed, and destroyed, at the will of either of the parties. Indeed, aside from the relief sought against Hopkins, as to his own ferry, it is presumed that Cross, himself, would not desire a specific enforcement of the negotiation. If he should, the court of equity, however disposed to afford him substantial relief, should not indulge him in a nominal remedy, promising little benefit, while it may occasion much detriment to either or both of the parties.

Whether, under the 2nd sec. of Chap. 133 of the Code, Cross's remedy in equity, because of the alleged fraudulent conveyance—if the fact be sustained—will be commensurate with that at law for the recovery of damage for Hall's breach of the contract, need not be now decided.

Cross getting no title to the ferry on the Greer land, sold by Hall to Hopkins, can have no relief against the latter on that account.

The remaining question to be considered, is whether Cross may restrain Hopkins from using his own ferry.

While the law of Ohio might grant a special privilege relative to a ferry landing on the shore of the Ohio River, in that State, it is not perceived that it could confer any privilege extending across the river to the shore on this side. It is alleged, however, in the bill, that Cross has for years owned, and still owns, a ferry which

1873.
January
Term.

Cross
v.
Hopkins.
et als.

was established by the laws of Ohio. The present ownership of the ferry is not questioned, but its previous continued ownership and its legal establishment are controverted, and not proved.

Whatever may be the character of Cross's franchise, it is claimed by him to extend from a point some distance below Racine, to Graham's station landing. Both of these *termini* are some distance below those of Hopkins's ferry.

In this State, a ferry is the creation of the statute law, and is regulated by its provisions. Somerville *vs.* Wimbish, 7 Grat., 205. Chap. 44 of the Code of West Virginia, confers on the Board of Supervisors the jurisdiction to establish ferries, and regulate the subject. The 6th section prohibits the Board from granting leave to establish a ferry across a water course within half a mile of another ferry legally established. But this prohibition excepts the grant of a ferry across the Ohio River. And the same section provides that ferries on that River may be established at any place the Board may determine.

The 15th sec. of Chap. 44 of the Code, which prohibits the owner of a ferry on the shore of another State, opposite or within two miles of a ferry established under the laws of this State, from ferrying from the shore of this State, has no application to this case. This is mentioned, because it is misconstrued in the bill.

Under the laws mentioned, the Board of Supervisors, on the 22d of November 1870, established Hopkins's ferry.

So that, if Cross's ferry had been legally established in this State, at the time of the execution of the contract between him and Hall, this would not have conferred on Cross the right to exclude Hopkins from running his ferry, and competing with Cross for the transportation across the river, and the emoluments of such enterprise.

For the reasons stated, the Court is of opinion that the decree of the Judge of the Circuit Court dissolving the injunction should be affirmed, and damages and costs awarded the Appellees; and the cause should be remanded to the Circuit Court of Mason county.

HAYMOND, President, and PAULL and MOORE, Judges, concur in the foregoing opinion.