502 S.E.2d 197

STATE of West Virginia ex rel. Barbara A. CORE, Clerk of the Circuit Court of Marion County, and the Marion County Commission, Petitioners,

v.

Honorable Rodney A. MERRIFIELD, Chief Judge of the Circuit Court of Marion County, Respondent.

No. 24633.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 1998.

Decided April 3, 1998.

James M. Cagle, Charleston, for Petitioners.

Elizabeth A. Pyles, Pyles & Auvil, Parkersburg, for Respondent.

PER CURIAM: [1]

■ This is an original proceeding in prohibition instituted by the relators, Barbara Core, Clerk of the Circuit Court of Marion County, and the Marion County Commission, against the respondent, the Honorable Rodney A. Merrifield, Chief Judge of the Circuit Court of Marion County.[2] The relators seek to prohibit the enforcement of Judge Merri-

field's general order entered March 14, 1997, concerning his authority over courtroom clerks, and an order of March 6, 1997, concerning the duties of the sheriff during felony criminal cases. Further, the relators seek to prohibit Judge Merrifield from issuing signed court orders containing a blank space in place of the amount of court-appointed attorney's fees. Finally, the relators complain that Judge Merrifield directed his courtroom clerk to replace a name in a juvenile file with the juvenile's initials. After a careful review of the issues raised and the documents filed in this action, we grant the writ as moulded.

## I.

## FACTS

A broad overview of the underlying facts in this case as set forth by the briefs, affidavits, and exhibits is as follows. On March 6, 1997, Judge Merrifield entered an order, titled "In re: All Felony Criminal Cases Scheduled For Jury Trial During The February, 1997 Term Of Circuit Court, Division II" ("sheriff's order"), which states:

It is hereby ORDERED this day that the jurors and alternate jurors selected to serve in all felony criminal cases during the February, 1997 term of Circuit Court, Division II, be kept in the custody of the Sheriff of Marion County during each trial between the hours of 8:30 a.m. to 5:00 p.m. or until further notice from this Court.

It is further ORDERED as follows:

1. The Sheriff shall make arrangements for appropriate accommodations for the jury as set forth herein during the trial, and shall provide for adequate security in the jurors' deliberation room.

2. The Sheriff shall make satisfactory arrangements to assist the jurors in going to and from their homes, if necessary.

3. The Sheriff shall make appropriate arrangements for the furnishing of vehicles (including the hiring of vehicles, if neces-

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. The Honorable Fred L. Fox, II became the Chief Judge of the Circuit Court of Marion County on January 1, 1998.

sary) for the transportation of jurors during this trial between their place of lodging and the County Courthouse, if necessary.

4. The Sheriff shall have each assigned deputy, which shall be at least two (2) in number, to submit to an oath before the Circuit Clerk of their duties set forth herein and to report to the Court no later than 8:45 a.m. each day during this trial.

5. The assigned Sheriff's personnel shall make certain that no member of the jury:

a. Has any unauthorized contact with any outside person.

b. Reads newspapers, magazines, periodicals, or listens to radio newscasts or bulletins pertaining to the trial or programs where the theme resembles the case being heard or decided upon.

c. Has any discussion with any outside person pertaining to the case.

d. Has any discussion of the case with other jurors before the case is submitted for deliberation.

e. Has written or telephone communication with any person, except under the direct supervision of the assigned Deputy Sheriff, on matters not pertaining to the case.

f. Any communication with the Court shall be made in writing and placed in a sealed envelope by the jury or individual juror, and upon being turned over to sheriff's personnel will be promptly delivered to the Court.

6. The Sheriff shall make appropriate arrangements for suitable sanitary facilities for the jury.

7. The Sheriff shall make arrangements to provide, at the Sheriff's expense, a non-alcoholic beverage (coffee, tea, milk, soda) on court days during the morning and afternoon recess.

9. (sic) The Sheriff shall make provisions to transport any juror who has previously made such arrangements with the Court to such medical doctors whose names the jurors shall furnish the Sheriff.

10. This Order may be altered, amended, and/or changed from time to time as in the Court's judgment conditions warrant.

The Clerk of this Court is directed to provide the Sheriff of Marion County and each individual juror a certified copy of this Order forthwith.

On March 12, 1997, Judge Merrifield met with Barbara Core, the Circuit Clerk of Marion County, in his courtroom. The subject of this hearing was a request Clerk Core had made of Judge Merrifield's courtroom clerk, Carol Harris, to put in writing a private conversation Ms. Harris recently had with Judge Merrifield. In response to Clerk Core's acknowledgment that she had made such a request of Ms. Harris, Judge Merrifield invoked his complete control over his courtroom clerk according to *Rutledge v. Workman*, 175 W.Va. 375, 332 S.E.2d 831 (1985). Specifically, he directed Clerk Core to not place anything in Ms. Harris's personnel file unless he saw it first; to not provide a hostile work environment for Ms. Harris when she is not in his courtroom; to not take any punitive action against Ms. Harris without his written consent; and to not have any meetings with Ms. Harris unless he is present. Judge Merrifield warned Clerk Core that her refusal to comply with *Rutledge* would result in "appropriate action." Throughout this meeting, Clerk Core stated her objections to these directives.[3]

On March 14, 1997,[4] Judge Merrifield issued a self-titled "General Order" which states:

WHEREAS, the efficient administration of the judicial system is essential to our duty to implement justice in this Circuit, and

WHEREAS, the Circuit Clerk is within the hierarchy of the judicial system, and

---

3. A copy of the transcript of this hearing is contained in the record.

4. In their petition for a writ of prohibition and supporting memorandum, the relators state that the general order was entered on March 4, 1997. In his reply to the petition, Judge Merrifield states that the order was entered March 14, 1997. A copy of the order is in the record and, although the date on the order is unclear, it appears to be March 14, 1997. In any case, the exact date of the order is not important to the resolution of this case.

WHEREAS, the Circuit Clerk is subject to the overall administrative control and direction of the West Virginia Supreme Court of Appeals, and

WHEREAS, except to the extent that the circuit courts are given explicit direction by the Supreme Court of Appeals, the power to control the affairs of the 16th Judicial Circuit is placed solely in the Chief Circuit Judge, and

WHEREAS, the Circuit Clerk is subject to the day-to-day supervision of the Chief Circuit Judge, and

WHEREAS, the Circuit Clerk has an obligation of the utmost good faith in all of her dealings with both Circuit Judges of this 16th Judicial Circuit, and

WHEREAS, Clerks are ministerial attendants of the Circuit Judge, and are under his direction and control, and

WHEREAS, whoever serves as Clerk must submit fully to the direction and control of the Chief Circuit Judge, and

WHEREAS, Circuit Judges are ultimately responsible for any action or inaction of courtroom personnel and only a Circuit Judge can determine whether they are suitable and sufficient for the court's needs, and

WHEREAS, the Circuit Judge must have direct and sole control over the courtroom personnel assigned to his court, and

WHEREAS, secret agreements imposed upon the Courtroom Clerk by the Circuit Clerk without the knowledge of the supervising Circuit Judge should not be encouraged and/or permitted.

WHEREAS, this Order is to be read in compliance with the principles as set forth in *Rutledge v. Workman*, [175 W.Va. 375] 332 S.E.2d 831 (1985).

It is therefor ORDERED that each Circuit Judge shall have complete control over the Deputy Clerk assigned to their individual courtroom.

It is further ORDERED that each Circuit Judge shall have the ultimate authority to select and assign as his Courtroom Clerk that individual whom most satisfies his needs from the coterie of deputy clerks. Although the Courtroom Clerk shall remain a Marion County Employee, they nevertheless will serve under the direct control and supervision of the individual Circuit Judge and at his sole will and pleasure.

It is further ORDERED that the Circuit Clerk shall make no decision to fire, promote, demote, discipline and/or transfer any courtroom deputy clerk without the prior consent of the individual Circuit Judge supervising said Courtroom Clerk.

It is further ORDERED that the Circuit Clerk shall not take any punitive action against a Courtroom Clerk which action shall include but not be limited to the assignment of additional duties, reduction in a rate of pay, etc., without the prior consent of the individual supervising Circuit Judge.

It is further ORDERED that the Circuit Clerk shall treat both Courtroom Clerks equally which shall include but not be limited to the same rights, benefits, and responsibilities.

It is further ORDERED that the Circuit Clerk and/or her deputies shall not make any inquiry into any private conversation and/or communication between the individual Circuit Judge and his Courtroom Clerk.

It is further ORDERED that the Circuit Clerk and/or her deputies shall not request and/or require any Courtroom Clerk to put into writing any private conversation and/or communication between said Courtroom Clerk and her individual supervising Circuit Judge.

It is further ORDERED that the Circuit Clerk and/or her deputies shall not provide and/or foster a hostile work environment for any Courtroom Clerk when they are not in the courtroom but doing the work for the individual supervising Circuit Judge.

It is further ORDERED that the Circuit Clerk and/or her deputies will immediately notify the supervising Circuit Judge of any and all information reflecting adversely on the Courtroom Deputy's continued employment with the said supervising judge as his Courtroom Clerk.

It is further ORDERED that the Circuit Clerk will provide for inspection to the supervising Circuit Judge any information and/or document deemed necessary to be placed in the personnel file of the said Courtroom Clerk.

It is further ORDERED that the Circuit Clerk will, upon request by the supervising Circuit Judge, provide immediately to the said supervising Circuit Judge the personnel file of the Courtroom Clerk maintained by said Circuit Clerk.

It is further ORDERED that this order will supersede any and/or all employment agreements and/or personnel policy rules currently in existence which may conflict with the provisions contained herein.

On August 13, 1997, the relators filed a petition for a writ of prohibition with this Court wherein they sought to prohibit enforcement of the sheriff's order and the general order reproduced above. They further complained that Judge Merrifield exceeded his lawful authority by leaving blank spaces in previously signed court orders pertaining to the amount of attorney's fees, and directing the circuit clerk to fill in the blanks once the attorney has provided a payment voucher. Finally, they asserted that Judge Merrifield had directed his courtroom clerk to remove the name of the accused from a juvenile file and replace it with initials so as to alter the accused's true identity. This Court issued a rule to show cause why the relief requested in the petition should not be granted against Judge Merrifield. For the following reasons, the writ is granted as moulded.[5]

## II.

## DISCUSSION

### The General Order of March 14, 1997

The primary focus of this prohibition proceeding is the general order of March 14, 1997. Necessary to a meaningful resolution of this issue is the application of the princi-

ples of the case of *Rutledge v. Workman*, 175 W.Va. 375, 332 S.E.2d 831 (1985). There, this Court was asked to decide "whether the clerk of a circuit court is part of that court and subject to the direction of the chief circuit judge, or, on the contrary, whether the clerk is an independent, elected official with unbridled discretion over the administration of her office." *Rutledge*, 175 W.Va. at 378, 332 S.E.2d at 833.

An overview of the facts in *Rutledge* is helpful to a proper understanding of its precepts. The setting for *Rutledge* was the "daily battleground for sordid, unnecessary, and debilitating political in-fighting" involving the Circuit Court of Kanawha County and the office of its circuit clerk. *Id.,* 175 W.Va. at 377, 332 S.E.2d at 832. Specifically, a dispute arose between Judge Margaret Workman[6] and Circuit Clerk Phyllis J. Rutledge over Mrs. Rutledge's assignment of courtroom clerks to Judge Workman's office. Over a period of years, Judge Workman was faced with the assignment of no clerks to her court, the assignment of incompetent or insubordinate clerks, and the transfer of competent clerks out of her court, much to the detriment of the efficiency of her court. All appeals to Mrs. Rutledge for cooperation in this matter failed. Finally, upon receiving notice that the transfer of yet another clerk from her office was imminent, Judge Workman entered an order prohibiting the transfer of her courtroom clerk without the court's approval. Chief Circuit Judge A. Andrew MacQueen ratified Judge Workman's order.

In deciding the issue of first impression presented in *Rutledge*, the Court noted the paucity of authority on the subject and turned for instruction to the *Constitution of the State of West Virginia*, specifically the Judicial Reorganization Amendment of 1974. *Rutledge* contains a lengthy and scholarly analysis of this amendment and its effect on the structure and administration of our state's court system. Germane to our purposes are this Court's conclusions concerning

---

5. Besides the facts recited above, the record contains other accusations and counter-accusations which further illustrate the unfortunate dispute between Clerk Core and Judge Merrifield. These will only be discussed when relevant.

6. The Honorable Justice Workman currently sits as a member of this Court.

the inherent administrative powers of circuit judges to perform non-judicial functions, including power over circuit clerks and deputy clerks assigned to their courts. Concerning the circuit clerk's role and responsibility within the judicial system, the Court concluded:

> The judicial article (Article VIII) of the *W.Va. Const.* creates the office of clerk of the circuit court and the circuit clerk is an officer within the judicial system; therefore, the hierarchy of administrative control established by *W.Va. Const.* art. VIII, § 3 that reposes overall administrative authority for the entire judicial system in the Supreme Court of Appeals by and through its Chief Justice and Administrative Director, and thereafter reposes local administrative authority in the circuit court through the judge or chief judge of each circuit also controls the office of circuit clerk with regard to the clerk's judicial functions.

Syllabus Point 2, *Rutledge, id.* Because of the chief circuit judge's local administrative authority and the judicial role of the circuit clerk, the Court found that,

> [i]t was the intention of the framers of the judicial article (Article VIII) of the *W.Va. Const.* that the clerk of a circuit court, although an independently elected, public official, be subject to the direction and control of the circuit court of the county in which she serves or of the chief judge of that county's circuit court with regard to her court-related duties.

Syllabus Point 1, *Rutledge, id.* Finally, regarding the circuit judge's authority over the deputy clerk assigned to his or her courtroom, the Court determined that "[a] circuit judge has complete control of the deputy circuit clerk assigned to her court and a circuit clerk may be removed from office under *W.Va.Code* 6–6–7 [1923] for failing to comply in the utmost good faith with the directions of the circuit court." Syllabus Point 3, *Rutledge, id.*

The clarity with which this Court spoke in *Rutledge* guaranteed that the efficient administration of justice at the circuit court level would not be constantly compromised by disputes over authority. Accordingly, in the years since *Rutledge* we have been confronted with few cases like the present one. This Court has had occasion, however, to reaffirm its reasoning in *Rutledge.* *State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 454 S.E.2d 65 (1994), concerned an administrative dispute between a circuit judge and a sheriff over who has the authority to hire and control bailiffs. In order to settle this question, the Court again relied upon the administrative hierarchy provided by the Reorganization Amendment. Citing *Rutledge,* the Court found that a bailiff, like a clerk, is an officer of the court who falls within this hierarchy. The Court found that, although sheriffs possess the authority to select bailiffs under W.Va.Code § 51–3–5, "ministerial attendants such as clerks and bailiffs, regardless of the method of their selection, fall within the administrative control of the court system." *Frazier,* 193 W.Va. at 29, 454 S.E.2d at 74. The Court concluded that "the circuit judge must direct and control bailiffs assigned to the court and that the sheriff's administrative function as it interrelates with the judicial administrative hierarchy must give way to the court's authority in times of substantial, genuine, and irreconcilable conflict." *Id.,* 193 W.Va. at 30, 454 S.E.2d at 75.

More recently, in *State ex rel. Lambert v. Stephens,* 200 W.Va. 802, 490 S.E.2d 891 (1997), we encountered a challenge by a county commission to a circuit judge's authority to enter an order designating a parking area solely for the use of magistrate court personnel. We found that the circuit judge has the power to issue such an order pursuant to the circuit court's administrative authority contained in the Reorganization Amendment. Specifically, we stated:

> Courts have inherent authority to require necessary resources, such as sufficient funds for operating expenses, work space, parking space, supplies, and other material items. In order for a court to invoke use of its inherent power to require resources, the court must demonstrate that such resources are reasonably necessary for the performance of its responsibilities in the administration of justice. Although courts must be cautious not to reach beyond the power of the judicial branch, it is

crucial for the judiciary to be able to invoke such power as is reasonably necessary to maintain itself as an independent and *equal* branch of our government.

Syllabus Point 3, *Lambert.*

In the case *sub judice*, the relators and The West Virginia Association of County Officials, through an *amicus curiae* brief, contend that the general order does not fall within the inherent administrative authority of the circuit court. The relators further assert that even if the order is administrative in nature, it far exceeds that which can be considered reasonable and necessary to the administration of justice. *Citing Lambert, supra.* In addition, the county commission argues that the order infringes upon its budget-making power set forth in *W.Va. Const.* art. IX, § 11[7], and its power under W.Va. Code § 7-7-7 (1982) to fix the budget of the circuit clerk.[8] The commission also complains that the order violates W.Va.Code § 7-7-7 inasmuch as employees of the circuit clerk's office are to be hired with the advice and consent of the county commission. Finally, the relators complain that some of the provisions of the order violate free speech and association rights.

Judge Merrifield responds that none of the orders complained of by the relators are currently in effect with the exception of the general order.[9] In addition, he asserts that the proper challenge to the orders is an appeal which, however, would not now be timely. Judge Merrifield also alleges that Clerk Core has violated the terms and conditions of the general order since its entry. Concerning the necessity for the issuance of the general order, Judge Merrifield states that Clerk Core subjects courtroom clerks assigned to his office to a hostile environment. According to Judge Merrifield, his present courtroom clerk was forced by Clerk Core to sign a secret agreement which provides that the courtroom clerk would be fired if she repeated anything to Judge Merrifield that she hears in the circuit clerk's office. Judge Merrifield concludes that he was compelled to issue the general order to protect his courtroom clerk from any further retaliatory action by Clerk Core, and to eliminate Clerk Core's ongoing obstruction of the efficient administration of justice.

■ As a preliminary matter, we find that an issue of this type may be reached by a writ of prohibition. Here we are asked to decide whether Judge Merrifield acted in excess of his inherent administrative power. Prohibition is clearly the appropriate remedy to challenge the actions of a court when a party alleges that the court acted without jurisdiction or beyond its legitimate powers. "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." W.Va.Code § 53–1–1 (1923); *See also* Syllabus Point 1, *State ex rel. UMWA International Union v. Maynard,* 176 W.Va. 131, 342 S.E.2d 96 (1985). In addition, even though apparently only the general order is currently in effect, we find that none of the issues raised by the relators are rendered moot. Traditionally, "[p]rohibition does not lie where the act complained of has been already done." Syllabus Point 1, *Town of Hawk's Nest v. County Court of Fayette County,* 55 W.Va. 689, 48 S.E. 205 (1904). However,

> [a] case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litiga-

---

7. *W.Va. Const.* art. IX, § 11 titled "Powers of County Commissions" provides, in relevant part, that county commissions "shall ... have the superintendence and administration of ... fiscal affairs of their counties[.]"

8. W.Va.Code § 7-7-7 states in relevant part:
 The county clerk, circuit clerk, joint clerk of the county commission and circuit clerk, if any, sheriff, county assessor and prosecuting attorney shall then fix the compensation of their assistants, deputies and employees based on the total amount of money designated for expenditure by their respective offices by the county commission and the amount so expended shall not exceed the total expenditure designated by the county commission for each office.

9. In oral argument before this Court, the relators stated that even though Judge Merrifield is not currently Chief Judge, *see* n. 2, to their knowledge all orders at issue are still in effect.

tion or the issues have lost their adversarial vitality, *if such issues are capable of repetition and yet will evade review.*

Syllabus Point 1, *State ex rel. M.C.H. v. Kinder,* 173 W.Va. 387, 317 S.E.2d 150 (1984) (emphasis added). In his response, Judge Merrifield states that orders directed to the sheriff and orders with blank spaces similar to those complained of are routinely utilized in the Marion County Circuit. The possibility, therefore, that similar orders, or the alteration of a juvenile file, may occur in the future, absent a ruling here, leads us to conclude that it is proper to resolve these issues. *See State ex rel. Ayers v. Cline,* 176 W.Va. 123, 342 S.E.2d 89 (1985).

We find that several provisions of the general order issued by Judge Merrifield on March 14, 1997 are proper and fall squarely within the inherent administrative authority of circuit courts set forth in the Judicial Reorganization Amendment and articulated in *Rutledge, supra.* On the other hand, we believe that some of the provisions of the order exceed this authority. Accordingly, we consider a detailed analysis of the specific provisions complained of necessary at this point.

 In their memorandum in support of petition, the relators point to several specific provisions of the general order in which, they assert, Judge Merrifield exceeded his legitimate administrative authority. First, the relators find offensive the provision concerning the circuit judge's selection and control of his courtroom clerk. This provision states:

> It is further ORDERED that each Circuit Judge shall have the ultimate authority to select and assign as his Courtroom Clerk that individual whom most satisfies his needs from the coterie of deputy clerks. Although the Courtroom Clerk shall remain a Marion County Employee, they nevertheless will serve under the direct control and supervision of the individual Circuit Judge and at his sole will and pleasure.

We find the relators perturbation with this provision unwarranted. The language of this provision is taken almost verbatim from *Rutledge* where this Court explained:

> The power of the assignment judge *to select and assign as his assistants those who satisfy his needs from the coterie of county employees* stems from the inherent power of the courts as implemented by R. 1:33–3(b). And although these assistants may remain county employees for the purpose of payment of their remuneration, they nevertheless serve under the *control and direction of the assignment judge in the unclassified category and at his pleasure.*

*Rutledge,* 175 W.Va. at 379, 332 S.E.2d at 835 (quoting with approval *Matter of Court Reorganization Plan of Hudson County,* 161 N.J.Super. 483, 391 A.2d 1255, 1260 (App. Div.1978) *aff'd o.b.* 78 N.J. 498, 396 A.2d 1144 (1979)) (emphasis added).

 The relators also complain of those provisions involving discipline of a courtroom clerk. According to the order, "the Circuit Clerk shall make no decision to fire, promote, demote, discipline and/or transfer any courtroom deputy clerk without the prior consent of the individual Circuit Judge supervising said Courtroom Clerk." Further, "the Circuit Clerk shall not take any punitive action against a Courtroom Clerk which action shall include but not be limited to the assignment of additional duties, reduction in a rate of pay, etc., without the prior consent of the individual supervising Circuit Judge." While we find these terms essentially proper, we believe that a caveat is in order. As noted above, a circuit judge has complete power to choose his assistants. This means of course, and *Rutledge* makes crystal clear, that a circuit judge can prevent a deputy clerk from being transferred from his courtroom. "[A] judge cannot have incompetent, obstreperous, scandalous, or uncooperative personnel thrust upon her[.]" *Rutledge,* 175 W.Va. at 380, 332 S.E.2d at 836. A concomitant notion is that a circuit clerk may take *no* action against a deputy clerk *that would adversely affect that clerk's abilities to perform her courtroom duties in an efficient manner, absent the consent of the judge for whom she is working.* It is obvious, therefore, that a deputy clerk may not be fired without the consent of the judge for whom she serves as a court-

room clerk. Further, any decision to promote, demote, discipline, assign additional duties to, or reduce the pay of a deputy clerk that affects that clerk's courtroom duties can only be made with the consent of that clerk's supervising judge.

■ It must be remembered, however, that,

[c]lerks and deputy clerks have several non-judicial or ministerial duties. In particular they play a large role in the administration of elections; their duties include: certification of each party's nominations, *W.Va.Code* 3–5–23 [1963]; the publication of each party's nominations, *W.Va.Code* 3–6–3 [1967]; the collection of filing fees from the candidates, *W.Va.Code* 3–5–8 [1980]; and the selection of ballot commissioners, *W.Va.Code* 3–1–19 [1968].

*Id.*, 175 W.Va. at 380, fn. 5, 332 S.E.2d at 836, fn. 5. In addition, a deputy clerk performs many court-related tasks outside of the courtroom. It is possible, therefore, that an employment action taken by a circuit clerk concerning a deputy clerk, short of transfer from a specific judge's courtroom or termination, would not affect the deputy clerk's courtroom duties whatsoever. These actions, accordingly, would not require the consent of the circuit judge. While not working for an individual circuit judge, a deputy clerk works for and is responsible to the circuit clerk. A circuit clerk has the same right as a circuit judge to demand cooperation and respect from her deputy clerks. Anything less would impair the effective operation of the circuit clerk's office and undermine the circuit clerk's ability to perform her constitutional functions. In his powerful role within the judicial hierarchy, a circuit judge must be careful not to prevent the proper disciplining of an incompetent or surly deputy clerk which would have the practical effect of granting the deputy clerk power over the circuit clerk. A circuit clerk simply must have the authority to punish a deputy clerk who, for example, is rude to the public or dilatory in the performance of her assigned tasks.

■ This same analysis, to some extent, applies to those sections of the order concerning a circuit judge's access to and control over the personnel file of his courtroom clerk. The order mandates that "the Circuit Clerk and/or her deputies will immediately notify the supervising Circuit Judge of any and all information reflecting adversely on the Courtroom Deputy's continued employment with the said supervising judge as his Courtroom Clerk." Obviously, since any such information could directly affect the clerk's courtroom duties, her supervising judge has the right to receive this information. We find, therefore, that this provision is proper under *Rutledge*. The order further requires the circuit clerk to "provide for inspection to the supervising Circuit Judge any information and/or document deemed necessary to be placed in the personnel file of the said Courtroom Clerk." Again, any such information considered of such importance to be placed in the deputy clerk's personnel file could potentially impact her continued employment. Consequently, the circuit judge has a right to this information. Finally, the order provides that "the Circuit Clerk will, upon request by the supervising Circuit Judge, provide immediately to the said supervising Circuit Judge the personnel file of the Courtroom Clerk maintained by said Circuit Clerk." For the reasons stated above, we find that the circuit judge has complete access to the personnel file of his courtroom clerk.

In addition, we do not believe the provisions discussed above infringe upon the powers of the county commission. We find no conflict between the county commission's role in the hiring of deputy clerks and the fixing of the circuit clerk's budget and the powers of the circuit judge to choose and control his own courtroom clerk.

■ We now turn to those portions of the order which we, like the relators, find troublesome. While we will discuss these parts of the order individually, we note at the outset that they all share the serious flaws of being vague, overly broad, and potentially unenforceable. Concerning the terms of employment of deputy clerks, the order decrees that "the Circuit Clerk shall treat both Courtroom Clerks equally which shall include but not be limited to the same rights, bene-

fits, and responsibilities." In addition, the order supersedes "any and/or all employment agreements and/or personnel policy rules currently in existence which may conflict with the provisions contained herein." Obviously, the provisions exceed what is necessary for a circuit judge to retain proper control over the selection and retention of his courtroom clerk. Further, even though the chief judge has complete control over the circuit clerk with regard to her court-related duties, this control simply does not extend to unilaterally formulating the employment policy governing *all* the deputy clerks in the circuit clerk's office. The provision concerning equal treatment ignores the fact that differences in ability, tenure and experience result in different benefits and rates of pay. Also, by statute, circuit clerks, not circuit judges, are to "fix the compensation of their assistants, deputies and employees based on the total amount of money designated for expenditure by their respective offices by the county commission[.]" W.Va.Code § 7-7-7, in part. Therefore, we find these portions of the order to be improper, and we are compelled to prohibit Judge Merrifield from taking any further action to enforce them.

We pause here to note Judge Merrifield's allegations that deputy clerks assigned to his office do not receive the same pay increases as the other deputy clerks in the circuit clerk's office. The sweeping provisions discussed above are apparently intended to remedy this. If such a situation as that described by Judge Merrifield were to exist based upon anything other than objective criteria such as the experience, talent, and skills of the personnel involved, it would damage a circuit judge's ability to attract intelligent and competent personnel to work in his courtroom and, therefore, hinder the efficient dispensation of justice. In such a situation, the circuit judge clearly has the power to and may find it reasonably necessary for the performance of his responsibilities in the administration of justice to procure additional resources from the county commission in order to increase the compensation of his courtroom clerk. *See State ex rel. Lambert v. Stephens, supra; Matter of Court Reorganization Plan, supra.*

The relators further find offensive those provisions of the order directing that the Circuit Clerk and/or her deputies shall not "make any inquiry into any private conversation and/or communication between the individual Circuit Judge and his Courtroom Clerk," or "request and/or require any Courtroom Clerk to put into writing any private conversation and/or communication between said Courtroom Clerk and her individual supervising Circuit Judge." Without resorting to a lengthy analysis of constitutional freedom of speech and association issues, or invasion of privacy issues, we simply find this provision overly broad and unenforceable. How such extensive directives could possibly be necessary to the administration of justice escapes our apprehension. We believe, also, that the powers of the circuit court articulated in *Rutledge* and reaffirmed here provide a circuit judge with sufficient authority to protect his courtroom clerk from any retaliatory treatment that may stem from personal conflict between the judge and the circuit clerk. For these reasons, we prohibit any further enforcement of these specific provisions.

Finally, we likewise find the order's prohibition against fostering "a hostile work environment for any Courtroom Clerk when they are not in the courtroom but doing the work for the individual supervising Circuit Judge" to be vague, overly broad, unenforceable, and not within the legitimate powers of a circuit judge to control the court-related duties of the circuit clerk and his own courtroom clerk. Also, for the same reasons stated above, we find it unnecessary.

We conclude our discussion of this issue by noting that orders like the one discussed above are fortunately rare. This observation is not meant as a criticism of any of the parties to this case. The accusations and counter-accusations that appear in the record present an unfortunate and regrettable picture of personal conflict. A complete understanding of the source and exact nature of this conflict is not possible merely from reading the record before us, nor is such understanding necessary for the proper resolution of this case. Obviously, Judge Merrifield tailored this order in response to perceived

threats to his right to exercise control over his courtroom clerk and his power to effectively administer justice in his courtroom. As this Court carefully analyzed each provision of the order and tested each against our clear holding in *Rutledge,* we struggled to remain sensitive to the essential offices and duties of both the circuit judge and the circuit clerk, without either of which our judicial system could not function. We are also cognizant of the considerable pressures and demands unique to each office.

 Nothing said in this opinion, however, is to be read as anything less than a complete affirmation of our holding in *Rutledge.* Let us be very clear on this point so there can be no misunderstanding. We strongly endorse and reaffirm the entire content and rulings of our decision in *Rutledge.* The analysis, law, logic, and holdings therein have stood the test of time and have proved to be practical in application, reasonable, and fair. "[O]ur first duty is to insure the fair and effective dispensation of justice." *Rutledge,* 175 W.Va. at 379, 332 S.E.2d at 835. The best way to do this is the adoption of practices and procedures that secure "businesslike management for the courts and [promote] simplified and more economical judicial procedures." *Id.,* 175 W.Va. at 379, 332 S.E.2d at 834. Toward that end, we reaffirm that,

> the circuit clerk, although elected by the voters, is completely subject to the control of the chief circuit judge of the circuit court and failure to follow to the letter and in the utmost good faith the direction of the judge or chief circuit judge is grounds for removal from office. Furthermore, a circuit judge has complete control of the deputy circuit clerk assigned to her court.

*Id.,* 175 W.Va. at 378, 332 S.E.2d at 833.

We now proceed to the second issue.

*The Sheriff's Order of March 6, 1997*

 Concerning the Sheriff's order of March 6, 1997, the relators complain of the fiscal demands made upon the county budget as well as the potential liability incurred by several of the order's provisions.[10] Specifically, the relators opine that those portions of the order mandating that deputies monitor the jurors' reading material, phone conversations, etc. constitute an invasion of privacy for which county officials could be legally liable. The relators further state that those provisions concerning the transportation of jurors to and from home or appointments unnecessarily raise insurance and fuel costs. In addition, the relators assert that the requirement of two deputies to cover a civil trial[11] is both unnecessary and a waste of manpower.

Judge Merrifield responds that such orders are routinely issued in his division of the Sixteenth Circuit and are crafted with the sheriff's approval.[12] He further contends that neither the circuit clerk nor the county commission have standing to protest the order. Judge Merrifield posits his authority to issue such an order in W.Va.Code § 62–3–6 (1965) which states:

> After a jury in a case of felony is impaneled and sworn, the court, in its discretion, may order the jury to be placed in the custody of the sheriff or other officer or officers designated by the court until the jury agree upon a verdict or are discharged by the court. While a jury is in the custody of the sheriff or other officer or officers as herein provided, they shall be furnished with suitable board and lodgings by the sheriff or other officer. After a jury has been impaneled no sheriff or other officer shall converse with, or permit anyone else to converse with, a juror unless by leave of the court. When the court orders a jury to be placed in the custody of the sheriff or other officer or officers, the court shall, in its discretion, determine the manner in which such jury shall be kept in custody by the sheriff or other officer or

---

10. The sheriff of Marion County is not a party to this action. Contained in the record is a letter from the sheriff stating that orders like the one issued on March 6, 1997 have never resulted in budget problems for his office.

11. We note, however, that the sheriff's order, by its own terms, applies only to "all felony criminal cases" and not to civil cases.

12. *See* footnote 8.

officers until the jury agree upon a verdict or are discharged by the court.

According to Judge Merrifield, the relators' concerns regarding the costs incurred as a result of this order are unfounded because W.Va.Code § 52–1–17 (1993)[13] provides that any expense incurred by the sheriff in his care of a jury will be reimbursed from the state treasury.

> As a general rule any person who will be affected or injured by the proceeding which he seeks to prohibit is entitled to apply for a writ of prohibition; but a person who has no interest in such proceeding and whose rights will not be affected or injured by it can not do so.

Syllabus Point 6, *State ex rel. Linger v. County Court of Upshur County*, 150 W.Va. 207, 144 S.E.2d 689 (1965). As noted previously, county commissions administer the fiscal affairs of their counties which, of course, includes the budget of the sheriff's department. We believe, therefore, that the Marion County Commission does have standing to challenge this order.

The office of sheriff is created by *W.Va. Const.* art. IX, § 1, and not by the judicial article. The sheriff, therefore, is not an officer within the judicial system's hierarchy of administrative authority. The county commission, as discussed previously, is expressly granted the power to administer the fiscal affairs of the county by *W.Va. Const.* art. IX, § 11. Pursuant to W.Va.Code § 7–7–7, the sheriff is a county officer whose budget is fixed by the county commission.

As noted above, the sheriff has the authority to select bailiffs who, once selected, fall within the administrative control of the court system. *See State ex rel. Frazier, supra.* However, changes in the number and duties of bailiffs in the sheriff's department is of special concern to the county commission because of the effect of such changes on the county budget.

> To comply with its duty under *W.Va. Code*, 7–7–7 [1982] of providing "reasonable and proper" compensation to the staff of the county officers, a county commission is required by that statute to "give due consideration to the duties, responsibilities and work required of the assistants, deputies and employees[.]" To give such consideration, a county commission obviously must be *informed* of the workload and operating needs of each county officer by consulting with each county officer as to those needs prior to fixing the budget for each county officer.

*State ex rel. Lambert v. Cortellessi*, 182 W.Va. 142, 148, 386 S.E.2d 640, 646 (1989). We believe that some of the provisions of the sheriff's order could significantly impact the budget set by the county commission without providing the commission ample opportunity to properly consider the additional responsibilities placed on the sheriff's department by the order. Moreover, we are not convinced that any additional expenses would be paid by the state treasury. While W.Va.Code § 52–1–17(a) provides for payment out of the state treasury for travel expenses incurred by jurors in their personal vehicles, it does not appear to support reimbursement for vehicle rentals and the additional insurance and fuel costs necessitated by transporting jurors in county vehicles. Also, W.Va.Code § 52–1–17(b) clearly contemplates reimbursement for costs incurred during jury sequestration.

We find Judge Merrifield's reliance on W.Va.Code § 62–3–6 for the authority to issue such an order misplaced as well. This

---

13. W.Va.Code § 52–1–17 (1993) provides, in relevant part:

> (a) A juror shall be paid mileage, at the rate set by the commissioner of finance and administration for state employees, for travel expenses from the juror's residence to the place of holding court and return and shall be reimbursed for other expenses incurred as a result of required attendance at sessions of the court at a rate of between fifteen and forty dollars, set at the discretion of the circuit court or the chief judge thereof, for each day of required attendance. Such reimbursement shall be based on vouchers submitted to the sheriff. Such mileage and reimbursement shall be paid out of the state treasury.
> (b) When a jury in any case is placed in the custody of the sheriff, he or she shall provide for and furnish the jury necessary meals and lodging while they are in the sheriff's custody at a reasonable cost to be determined by an order of the court; and the meals and lodging shall be paid for out of the state treasury.

code section refers to a court's discretion to sequester jurors in felony criminal cases when necessary to the administration of justice and not to every situation in which a jury is impaneled to hear a felony criminal case. *See State v. Young,* 173 W.Va. 1, 311 S.E.2d 118 (1983); *Bowman v. Bordenkircher,* 522 F.2d 209 (4th Cir.1975). Simply put, the provisions of W.Va.Code § 62–3–6 apply only in those very rare instances where a jury is sequestered. It clearly does not apply when jurors are routinely attending court day to day and are not sequestered. Therefore, we agree with the relators that several of the provisions of the order exceed the powers of the circuit court.

■ Specifically, we find the following provisions relating to transportation of jurors improper:

2. The Sheriff shall make satisfactory arrangements to assist the jurors in going to and from their homes, if necessary.

3. The Sheriff shall make appropriate arrangements for the furnishing of vehicles (including the hiring of vehicles, if necessary) for the transportation of jurors during this trial between their place of lodging and the County Courthouse, if necessary.

9. The Sheriff shall make provisions to transport any juror who has previously made such arrangements with the Court to such medical doctors whose names the jurors shall furnish the Sheriff.

We note, however, that there are extraordinary situations where it may be necessary for the sheriff to transport a juror. In certain instances, such as inclement weather or other emergencies, it is perfectly proper for the sheriff to provide or arrange transportation for jurors.

■ Likewise, we agree with the relators concerning the following provisions:

5. The assigned Sheriff's personnel shall make certain that no member of the jury:

a. Has any unauthorized contact with any outside person.

b. Reads newspapers, magazines, periodicals, or listens to radio newscasts or bulletins pertaining to the trial or programs where the theme resembles the case being heard or decided upon.

c. Has any discussion with any outside person pertaining to the case.

d. Has any discussion of the case with other jurors before the case is submitted for deliberation.

e. Has written or telephone communication with any person, except under the direct supervision of the assigned Deputy Sheriff, on matters not pertaining to the case.

It is clearly appropriate for circuit judges to direct jurors not to read newspaper accounts or watch television news programs containing accounts of a trial upon which they are sitting. Indeed, judges may take virtually any action to ensure the impartiality and integrity of a jury trying a case. Provisions such as the ones here, however, are unnecessary and unworkable. We could never countenance allowing a policeman or any agent of the government to censor which newspapers, magazines or periodicals a citizen can read or which radio or news. programs he can listen to or watch. Neither can policemen ever be permitted to monitor and supervise telephone or written communications of any citizen. This is not a police state. Therefore, for the reasons stated, we prohibit the further enforcement of the above-cited provisions.

■ On the other hand, we find the following provisions proper and well within the powers of the circuit court.

1. The Sheriff shall make arrangements for appropriate accommodations for the jury as set forth herein during the trial, and shall provide for adequate security in the jurors' deliberation room.

4. The Sheriff shall have each assigned deputy, which shall be at least two (2) in number, to submit to an oath before the Circuit Clerk of their duties set forth herein and to report to the Court no later than 8:45 a.m. each day during this trial.

5.f. Any communication with the Court shall be made in writing and placed in a sealed envelope by the jury or individual juror, and upon being turned over to sheriff's personnel will be promptly delivered to the Court.

6. The Sheriff shall make appropriate arrangements for suitable sanitary facilities for the jury.

7. The Sheriff shall make arrangements to provide, at the Sheriff's expense, a non-alcoholic beverage (coffee, tea, milk, soda) on court days during the morning and afternoon recess.

These provisions are consistent with a circuit judge's authority to control his courtroom and courtroom personnel, and are reasonably geared to provide efficiency in the day to day administration of justice.

### Signed Court Orders Containing Blank Spaces

 Clerk Core laments that Judge Merrifield has issued sentencing orders containing a blank space in place of the amount of the fee charged by the defendant's court-appointed attorney. For example, attached as an exhibit to the petition herein is a copy of an "AMENDED PLEA AND SENTENCING ORDER" dated March 31, 1997 and signed by Judge Merrifield. This order contains the following paragraphs:

10. Probationer shall pay the costs of this proceeding as taxed by the Clerk of this Court in the amount of Two Hundred Fifty Two Dollars ($252.00), and shall pay attorney fees in the amount of $_____, to and through the Marion County Circuit Clerk's Office, said amount to be paid within one (1) year.

\* \* \* \* \* \*

... It is further Ordered that the Clerk of this Court shall complete the attorney's fees blank in Paragraph 10 the conditions of probation herein contained upon the submission of the attorney's payment voucher to the Clerk.

Clerk Core contends that orders such as this expose her and her employees to allegations of wrongdoing or error in the collection of the unspecified amount of money for attorney's fees. She further states that the defendant-probationer is also exposed to prob-

lems because the order does not put her on notice as to precisely what action she is directed to take.

Judge Merrifield responds that both divisions of the Marion County Circuit Court regularly utilize such orders but that Clerk Core has only challenged his use of such an order.[14] Additionally, Judge Merrifield avers that the order clearly expresses the action to be taken and the manner in which the action is to be taken by the circuit clerk. As a "compelling" reason for issuing such an order, Judge Merrifield explains that the prompt entry of a sentencing order for a remanded defendant relieves the county of the cost of incarceration. To defer the order's entry until the attorney's payment voucher is submitted would result in substantial delay. Furthermore, the issuance of another order upon submission of the voucher would require a separate appearance by the defendant at significant expense to the state. Judge Merrifield concludes that the additional burden to the circuit clerk occasioned by the entry of the complained of order is *de minimis.*

 Although we appreciate Judge Merrifield's well-articulated reasons for entering orders such as those described above, we are inclined to agree with Clerk Core on this issue. "As a general rule, the clerk of a circuit court has a mandatory, nondiscretionary duty to record in the appropriate civil order book in her office a final judgment order entered in a civil action and endorsed for entry by the signature of the judge of the court." Syllabus Point 1, *Humphrey v. Mauzy,* 155 W.Va. 89, 181 S.E.2d 329 (1971). The clerk has no less a duty in criminal matters. *W.Va. Rule of Criminal Procedure* 55 provides:

The clerk of the circuit court and the clerk of the magistrate court shall keep records in criminal proceedings in such form as the Supreme Court of Appeals may prescribe. The clerk shall enter in

---

14. In the record is a letter from the Honorable Fred L. Fox, II, Judge of Division I of the Sixteenth Judicial Circuit, in which he states:

[I]n the past, criminal sentencing orders were entered by me without the attorney fees blank

having been filled in. Upon my realization of the problems thus created, this practice has ceased, and the orders are now entered only after the information regarding attorney fees has been received and inserted therein.

the records each order or judgment of the court and the date such entry is made. The importance of the careful compilation and maintenance of complete and accurate records to our judicial system and appellate process can scarcely be overemphasized. "A court of record speaks only through its orders[.]" *State ex rel. Erlewine v. Thompson,* 156 W.Va. 714, 718, 207 S.E.2d 105, 107 (1973) (citations omitted). Furthermore, "[c]ourts of record can speak only by their records, and what does not so appear does not exist in law." Syllabus Point 3, *Hudgins v. Crowder and Freeman, Inc.,* 156 W.Va. 111, 191 S.E.2d 443 (1972). Accordingly, the issuance of orders with blank spaces in place of a sum for attorney's fees is prohibited.

### Alteration of a Juvenile File

■ According to the relators, Judge Merrifield directed a deputy circuit clerk to remove a part of the name of an accused from a juvenile file and replace it with initials so as to alter the accused's true identity in the records of the circuit clerk's office. Judge Merrifield responds that he did not alter, nor direct anyone to alter, the name of a juvenile. He states further, however, that there have been several occasions in which juveniles have been identified by initial instead of full name. In an affidavit submitted to this Court in support of Judge Merrifield's response, Carol Harris, Judge Merrifield's courtroom clerk, states that she suggested to Judge Merrifield that initials be used in a particular juvenile file because of a lack of confidentiality in the circuit clerk's office.[15]

■ It is well-settled that "[a] court has the inherent power to amend its records in accordance with the facts." *State v. Huffman,* 141 W.Va. 55, 72, 87 S.E.2d 541, 552 (1955) (citations omitted), *overruled on other grounds by State ex rel. R.L. v. Bedell,* 192 W.Va. 435, 452 S.E.2d 893 (1994). The purpose is "that the rolls shall 'speak the truth.'" *Dwight v. Hazlett,* 107 W.Va. 192, 196, 147 S.E. 877, 878 (1929). "The propriety of the amendment is within the sound discretion of the judge, at whose direction the record was made." *Id.* (Citations omitted). However, "[t]he errors which a judge or court has inherent power to correct ... are limited to clerical and such other errors of record, as prevent it from expressing the judgment rendered." *Highland v. Strosnider,* 118 W.Va. 647, 648, 191 S.E. 531 (1937).[16] The allegations in the instant case do not involve amending a record to correct an omission or clerical mistake and, therefore, are not within the power of a circuit court.

Sensitivity to the importance of guarding the confidentiality of juvenile records is not only laudable but also required by law. Toward that end, this Court does not use the last names of juvenile parties in opinions. *See Matter of Jonathan P.,* 182 W.Va. 302, 303, n. 1, 387 S.E.2d 537, 538, n. 1 (1989). But there is a crucial distinction between public and private documents. Unlike published opinions or orders, juvenile records are confidential, are not public, and are available upon request only as authorized by statute. *W.Va.Code* § 49–5–17 (1997).[17] Accordingly, alterations made in juvenile files are plainly unnecessary and, considering the above-mentioned importance of an accurate record, an undesirable practice. If a legitimate concern exists over confidentiality in

15. The record also contains affidavits of Pamela Glover, Judge Merrifield's secretary and Sharon McDaniel, Secretary for the Prosecuting Attorney of Marion County, both of which state a belief in the lack of confidentiality in the circuit clerk's office.

16. *W.Va. Rule of Civil Procedure* 60(a) provides:
 Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is

docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.
 Likewise, *W.Va. Rule of Criminal Procedure* 36 states that "[c]lerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders."

17. It is unclear from the record when any of the alleged alterations of juvenile records occurred. This code section was substantially amended effective March 19, 1997. However, both the prior and current versions clearly provide that juvenile records are not public records.

the circuit clerk's office, we are confident that a less drastic solution can be found. Therefore, the practice of amending juvenile records because of confidentiality concerns is prohibited.

## III.

## CONCLUSION

For the reasons stated above, we grant the writ as moulded.

Writ granted as moulded.