IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

SEPTEMBER 2014 TERM

_____

No. 14-0587

_____

FILED

October 15, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. PATRICK MORRISEY,
ATTORNEY GENERAL OF WEST VIRGINIA,
Petitioner

V.

WEST VIRGINIA OFFICE OF DISCIPLINARY COUNSEL AND
WEST VIRGINIA LAWYER DISCIPLINARY BOARD,
Respondents

PETITION FOR WRIT OF PROHIBITION

WRIT DENIED

Submitted: September 30, 2014
Filed: October 15, 2014

Patrick Morrisey
Attorney General
Elbert Lin
Solicitor General
J. Zak Ritchie
Assistant Attorney General
Charleston, West Virginia
Attorneys for Petitioner

Rachael L. Fletcher Cipoletti
Renee N. Frymyer
Office of Disciplinary Counsel
Charleston, West Virginia
Attorneys for Respondents

Christopher C. Quasebarth
Berkeley County Prosecutor's Office
Martinsburg, West Virginia
Brandon C.H. Sims
Jefferson County Prosecutor's Office
Charles Town, West Virginia

Attorneys for Amicus Curiae,
West Virginia Prosecuting
Attorneys Association


**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE BENJAMIN concurs in part and dissents in part and reserves the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1.      "As a general rule any person who will be affected or injured by the proceeding which he seeks to prohibit is entitled to apply for a writ of prohibition; but a person who has no interest in such proceeding and whose rights will not be affected or injured by it can not do so."  Syllabus point 6, *State ex rel. Linger v. County Court of Upshur County*, 150 W. Va. 207, 144 S.E.2d 689 (1965).

2.      "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith."  Syllabus point 5, *State v. Snyder*, 64 W. Va. 659, 63 S.E. 385 (1908).

3.      In the absence of a statute indicating otherwise, a prosecutor's appointment of assistants under W. Va. Code § 7-7-8 (1987) (Repl. Vol. 2010) and W. Va. Code § 7-7-7 (2011) (Supp. 2014) is generally limited to that of appointing attorneys as employees of the prosecutor and county commission.

i

4. In the absence of a statute indicating otherwise, county prosecutors do not have authority under W. Va. Code § 7-7-8 (1987) (Repl. Vol. 2010) to appoint the Attorney General or any member of the Attorney General's office as a special prosecutor.

5. As a result of the ratification of West Virginia Constitution article 9, § 1 by the people of this State and the Legislature's enactment of W. Va. Code § 7-4-1 (1971) (Repl. Vol. 2010), the common law criminal prosecutorial authority of the Attorney General was abolished.

**Davis, Chief Justice:**

This matter was brought under the original jurisdiction of this Court by Patrick Morrisey, Attorney General of West Virginia. The Attorney General seeks a writ of prohibition against the Office of Disciplinary Counsel and the West Virginia Lawyer Disciplinary Board (collectively "ODC") to prevent ODC from enforcing an informal advisory opinion that it issued.[1] The informal advisory opinion determined that the Attorney General did not have authority to prosecute criminal cases outside of the limited prosecutorial authority granted by W. Va. Code § 5-3-2 (1987) (Repl. Vol. 2013).[2] The ODC also indicated in the informal advisory opinion that Rule 8.4(d) of the Rules of Professional Conduct would be violated if the Attorney General prosecuted criminal cases outside the scope of that which was provided by statute. The ODC further also concluded that Rule 1.7(b) of those rules could potentially be violated.

In support of his request for the writ of prohibition, the Attorney General contends that county prosecutors have authority to request the Attorney General to assist with

---

[1]The Attorney General filed and briefed this matter as a petition for a writ of prohibition. However, in a footnote of his brief, the Attorney General seems to suggest that he also seeks a writ of mandamus. Insofar as the Attorney General did not file a petition for a writ of mandamus and did not brief that issue, we decline to view this matter as a writ of mandamus proceeding.

[2]Throughout this opinion, our reference to "Attorney General" includes the lawyers in his office, unless otherwise indicated.

1

criminal prosecutions, and that the office of Attorney General has independent common law authority to prosecute criminal cases. After a careful review of the briefs and the appendix filed, and listening to the argument of the parties, we deny the writ.[3]

# I.

## FACTUAL AND PROCEDURAL HISTORY

On October 9, 2013, a Mingo County Commissioner, Greg Smith, telephoned the Attorney General's office with a request that the Attorney General provide prosecutorial services for the county.[4] In response to the request, the Attorney General telephoned ODC and asked whether "a deputy or assistant attorney general who accepted appointment as the Mingo County prosecutor would need to resign from the Office of Attorney General or take a leave of absence." According to the Attorney General, ODC responded that such an appointment would trigger disciplinary action.[5]

---

[3]This Court wishes to acknowledge that an Amicus Curiae brief was filed by the West Virginia Prosecuting Attorneys Association in support of ODC. Because of the impact of this proceeding on all prosecutors in the State, we permitted the Association to participate in oral arguments.

[4]The Mingo County prosecutor was facing federal criminal charges at the time. When there is a vacancy in the office of prosecutor, W. Va. Code § 3-10-8 (2013) (Repl. Vol. 2013) provides the procedure for the temporary appointment of a lawyer to fill the vacancy. Under W. Va. Code § 3-10-8(a), the county commission is authorized to fill the position "within thirty days of the vacancy by appointment of a person of the same political party as the officeholder vacating the office."

[5]ODC's brief indicates that it merely informed the Attorney General that it did
(continued...)

2

Not satisfied with ODC's response, the Attorney General telephoned ODC the following day with a modified question. This time the Attorney General asked ODC "whether a deputy or assistant attorney general could ethically accept appointment as a special assistant prosecutor supervised by a prosecuting attorney." According to the Attorney General, ODC once again stated that the Rules of Professional Conduct prohibited such an appointment.[6]

On October 17, 2013, the Attorney General sent ODC a letter requesting a formal advisory opinion on the following question: "Whether under the Rules of Professional Conduct a deputy or assistant attorney general may ethically accept appointment as a special assistant prosecutor by a county prosecutor pursuant to West Virginia Code § 7-7-8." The Attorney General's letter outlined in detail the reasons he believed that no ethical violation would result from his office undertaking prosecutorial duties. The letter concluded that, in the event of a conflict arising from such duties, the conflicted attorney could be screened and that "the Rules cannot infringe on the Office of Attorney General's common law and statutory authority to assist county prosecutors with their duties."

---

[5](...continued) not believe that it was "permissible by law" for the Attorney General "to accept the appointment as the constitutional officer of the Mingo County Prosecutor[.]"

[6]ODC's brief indicates that it informally advised the Attorney General that the modified question was "rife with potential conflict and [that ODC] was not aware of any constitutional or statutory authority permitting the [request]."

3

On January 24, 2014, the ODC responded to the Attorney General's request for a formal advisory opinion by stating that ODC "declines to issue a formal advisory opinion in this matter and considers this response to be an informal advisory opinion pursuant to Rule 2.15[.]"[7]  The informal advisory opinion issued by ODC stated:

> [T]he Lawyer Disciplinary Board determined that there currently exists in West Virginia no authority, constitutional, statutory or otherwise, for the Attorney General to assist county prosecutors with criminal prosecutions outside of what is contemplated in W. Va. Code § 5-3-2 (concerning the prosecution of criminal proceedings arising from extraordinary circumstances existing at state institutions of corrections).  Thus, it was the opinion of the Lawyer Disciplinary Board that to assist a county prosecutor in the criminal prosecutions contemplated in your request would be a violation of Rule 8.4(d) of the Rules of Professional Conduct and, as was previously discussed, a potential violation of Rule 1.7(b) of the Rules of Professional Conduct.  It is further noted that it is not likely a waivable conflict because of state actors.

The Attorney General's brief indicates that, on June 2, 2014, he received a

---

[7]The ODC and Investigative Panel of the Lawyer Disciplinary Board are authorized to issue an informal advisory opinion under Rule 2.15 of the Rules of Lawyer Disciplinary Procedure.  Under Rule 2.15(c), an informal advisory opinion "is not binding on the Hearing Panel of the Lawyer Disciplinary Board or the Court, but shall be admissible in any subsequent disciplinary proceeding involving the requesting lawyer."

Rule 2.16 of the rules provides for a formal advisory opinion, which is rendered directly by the Hearing Panel.  Pursuant to Rule 2.16(d), "[a] formal advisory opinion is binding on the Hearing Panel of the Lawyer Disciplinary Board in any subsequent disciplinary proceeding involving the requesting lawyer, but is not binding upon the Supreme Court of Appeals."

letter by facsimile from the prosecuting attorney of Preston County requesting assistance with criminal prosecutions. However, because of the informal advisory opinion of ODC, the Attorney General contends that he did not accept the request from the prosecutor. Instead, the Attorney General filed the instant petition for a writ of prohibition.

## II.

## STANDARD OF REVIEW

This Court has explained the standard of review applicable to a writ of prohibition by stating that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). In Syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996), this Court held:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for

5

determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

## III.

## DISCUSSION

The instant proceeding comes before this Court as a petition for a writ of prohibition. Prior to addressing the merits of the request for relief, we must consider whether the Attorney General has standing to invoke this Court's extraordinary jurisdiction in the first instance. We then will examine the collateral issue of whether the Attorney General has authority to prosecute criminal offenses.

### A. *Standing and the Issuance of an Advisory Opinion by this Court*

Here, the Attorney General seeks to prohibit enforcement of an informal advisory opinion by ODC. Although we have had occasion to consider a petition for a writ of prohibition against ODC, it has never been in the context of a petition to prohibit enforcement of an informal advisory opinion. Usually, a writ of prohibition has been sought against ODC after a complaint has been filed against a lawyer. *See State ex rel. York v. West Virginia Office of Disciplinary Counsel*, 231 W. Va. 183, 744 S.E.2d 293 (2013) (denying writ of prohibition to attorney seeking to prohibit ODC from prosecuting him for alleged ethics violations); *State ex rel. Clifford v. West Virginia Office of Disciplinary Counsel*, 231

6

W. Va. 334, 745 S.E.2d 225 (2013) (granting writ to prohibit ODC from prosecuting a complaint alleging conflict of interest by attorney); *State ex rel. Scales v. Committee on Legal Ethics of West Virginia State Bar*, 191 W. Va. 507, 446 S.E.2d 729 (1994) (granting writ of prohibition to stop ethics investigation). For the reasons set forth, we have determined that the petition for a writ of prohibition in this case is improper because the Attorney General lacks standing, and the relief sought is advisory. The grounds for denial are discussed separately below.

**1. The Attorney General lacks standing.** The Attorney General has not alleged that an ethics complaint was filed against him. Nor has ODC begun an independent investigation into a possible ethical violation by the Attorney General with respect to the specific facts alleged in the petition. ODC has simply responded to a request by the Attorney General to render an opinion about the participation of the Attorney General in criminal prosecutions under specific circumstances. ODC rendered an informal advisory opinion indicating that if the Attorney General engaged in criminal prosecutions under the circumstances outlined by him, Rule 8.4(d) would be violated, and Rule 1.7(b) had the potential of being violated. The Attorney General seeks a writ of prohibition to prevent enforcement of this non-binding informal advisory opinion. This is not a proper basis for seeking a writ of prohibition and does not satisfy any of the factors enunciated in *Hoover*. More importantly, the Attorney General has not passed the threshold issue of standing.

7

Standing, of course, may be raised at any time by a party or *sua sponte* by the Court. *See State ex rel. Abraham Linc Corp. v. Bedell*, 216 W. Va. 99, 111, 602 S.E.2d 542, 554 (2004) (Davis, J., concurring) ("The decisions of this Court and other jurisdictions have pointed out that an appellate court has the inherent authority and duty to *sua sponte* address the issue of standing, even when the parties have failed to raise the issue at the trial court level or during a proceeding before the appellate court.").[8]

This Court has held that a petition for a writ of prohibition "may be maintained by any person *injuriously affected* by the action which he seeks to prevent[.]" *State ex rel. Gordon Mem'l Hosp. v. West Virginia State Bd. of Exam'rs for Registered Nurses*, 136 W. Va. 88, 105, 66 S.E.2d 1, 11 (1951) (emphasis added; internal quotations and citation omitted). The "injuriously affected" requirement to obtain a writ of prohibition was set out succinctly in Syllabus point 6 of *State ex rel. Linger v. County Court of Upshur County*, 150 W. Va. 207, 144 S.E.2d 689 (1965), as follows:

> As a general rule any person who will be affected or injured by the proceeding which he seeks to prohibit is entitled to apply for a writ of prohibition; but a person who has no interest in such proceeding and whose rights will not be affected or injured by it can not do so.

*Accord In re Dandy*, 224 W. Va. 105, 106 n.1, 680 S.E.2d 120, 121 n.1 (2009). We have recognized the holding in *Linger* as a standing requirement for invoking the writ of

---

[8]The Amicus brief also raised and briefed the standing issue.

prohibition. *See Myers v. Frazier*, 173 W. Va. 658, 676, 319 S.E.2d 782, 800 (1984) ("In reviewing our prohibition cases, we note that the general rule for standing is expressed in Syllabus Point 6 of *State ex rel. Linger v. County Court of Upshur County*, 150 W. Va. 207, 144 S.E.2d 689 (1965)). *Accord State ex rel. Core v. Merrifield*, 202 W. Va. 100, 113, 502 S.E.2d 197, 210 (1998); *State ex rel. Goodwin v. Cook*, 162 W. Va. 161, 166, 248 S.E.2d 602, 605 (1978).[9]

The Attorney General contends that he was "affected or injured" by ODC's informal advisory opinion because he would risk an ethics complaint being filed against him, and the reputational stigma associated with the same, if he acted contrary to the informal advisory opinion. Consequently, the Attorney General contends that he has a right to seek a writ of prohibition to prevent the possible filing of an ethics complaint against him. The logic of the Attorney General would have this Court entertaining a writ of prohibition from

---

[9]With respect to our general rule on standing, we have held:

> Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

Syl. pt. 5, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002).

9

every individual who receives an "adverse" advisory opinion from ODC and all other state entities that are allowed to issue advisory opinions. *See* W. Va. Code § 3-1B-3 (1995) (Repl. Vol. 2013) (advisory opinion by state election commission); W. Va. Code § 5-3-1 (1994) (Repl. Vol. 2013), W. Va. Code § 18-12B-11 (1977) (Repl. Vol. 2012), & W. Va. Code § 30-38-18 (2001) (Repl. Vol. 2012) (advisory opinion by the attorney general); W. Va. Code § 11-10-5r (1986) (Repl. Vol. 2013) (advisory opinion by tax commissioner); W. Va. Code § 6-9A-11 (2006) (Repl. Vol. 2010), W. Va. Code § 6B-2-3 (2004) (Repl. Vol. 2010), W. Va. Code § 6B-2-5 (2008) (Repl. Vol. 2010), & W. Va. Code § 18-5-1a (2010) (Repl. Vol. 2012) (advisory opinion by West Virginia Ethics Commission); W. Va. Code § 18-5A-3 (1993) (Repl Vol. 2012) (advisory opinion by state board of education); W. Va. Code § 18-10F-2 (2011) (Repl. Vol. 2012) (advisory opinion by the interstate commission); W. Va. Code § 28-7-1 (2003) (Repl. Vol. 2013) (advisory opinion by the interstate commission for adult offender supervision); W. Va. Code § 33-47-16 (2004) (Repl. Vol. 2011) (advisory opinion by interstate insurance product regulation commission); W. Va. Code § 49-8A-1 (2004) (Repl. Vol. 2014) (advisory opinion by the interstate commission for juveniles).

The writ of prohibition is not designed to accord relief to a person who merely receives a requested advisory opinion with which he or she disagrees.[10] The writ of

---

[10]We also point out that the Attorney General's brief appears to be blaming ODC for preventing him from prosecuting criminal cases. ODC did not bar the Attorney General from doing anything. ODC simply issued an informal advisory opinion that

(continued...)

prohibition is not a revolving door. *See Woodall v. Laurita*, 156 W. Va. 707, 713, 195 S.E.2d 717, 721 (1973) ("The piecemeal challenge of discretionary rulings through writs of prohibition does not facilitate the orderly administration of justice."). "[T]he right to prohibition must be clearly shown before a petitioner is entitled to this extraordinary remedy." *Norfolk S. Ry. Co. v. Maynard*, 190 W. Va. 113, 120, 437 S.E.2d 277, 284 (1993). *See also State ex rel. Kees v. Sanders*, 192 W. Va. 602, 606, 453 S.E.2d 436, 440 (1994) ("The petitioner's right to the extraordinary remedy of prohibition must clearly appear before he is entitled to such remedy."). All that the Attorney General has shown is that he disagrees with an informal advisory opinion by ODC that suggests ethical violations may occur if he prosecutes criminal cases in the manner proposed by him. This showing does not satisfy the "affected or injured" requirement for standing to seek a writ of prohibition. The Attorney General has suffered no injury, nor has any action been taken.

**2. The relief sought is advisory.** In addition to lacking standing, the relief sought by the Attorney General would result in this Court issuing an advisory opinion on the application of Rule 8.4(d) and Rule 1.7(b) to a situation that has not occurred.

It is a deeply rooted and fundamental law that "this Court is not authorized to issue advisory opinions[.]" *State ex rel. City of Charleston v. Coghill,* 156 W. Va. 877, 891,

---

[10](...continued)
addressed the question presented to it by the Attorney General.

11

207 S.E.2d 113, 122 (1973) (Haden, J., dissenting). In this regard, we observed in

*Harshbarger v. Gainer,* 184 W. Va. 656, 659, 403 S.E.2d 399, 402 (1991), that "[s]ince

President Washington, in 1793, sought and was refused legal advice from the Justices of the

United States Supreme Court, courts–state and federal–have continuously maintained that

they will not give 'advisory opinions.'" Moreover, in *United Fuel Gas Co. v. Public Service*

*Commission,* 73 W. Va. 571, 578, 80 S.E. 931, 934 (1914), we noted that "[b]y the plain

terms of the Constitution appellate jurisdiction is limited to controversies arising in judicial

proceedings[.]" This Court further addressed the issue of advisory opinions in *Mainella v.*

*Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont,* 126 W. Va.

183, 185-86, 27 S.E.2d 486, 487-88 (1943), as follows:

> Courts are not constituted for the purpose of making advisory
> decrees or resolving academic disputes. The pleadings and
> evidence must present a claim of legal right asserted by one
> party and denied by the other before jurisdiction of a suit may be
> taken.

Consistent with our general rule, it is obvious that "the writ of prohibition cannot be

invoked[] to secure from th[is] Court . . . an advisory opinion[.]" *Barnett v. Brett*, 401 P.2d

532, 534 (Okla. Crim. App. 1965). *See also State ex rel. ACF Indus., Inc. v. Vieweg*, 204

W. Va. 525, 533 n.13, 514 S.E.2d 176, 184 n.13 (1999) (declining writ of prohibition as

seeking advisory opinion).

In the instant proceeding, the Attorney General has cited to no valid authority,

12

nor does any authority exist, that permits this Court to decide whether ODC exceeded its legitimate authority by issuing an informal advisory opinion regarding Rule 8.4(d) and Rule 1.7(b). As we have pointed out elsewhere in this opinion, Rule 2.15(c) grants ODC authority to issue informal advisory opinions. Nowhere in that rule does it state that ODC must issue informal advisory opinions that the requesting attorney will agree with. In fact, the rule makes abundantly clear that an informal advisory opinion is not binding on this Court or a Hearing Panel, in the event of a disciplinary proceeding arising out of matters addressed in the informal advisory opinion. Insofar as no disciplinary proceeding has been instituted against the Attorney General as a result of the informal advisory opinion, any decision on the merits of ODC's position on Rule 8.4(d) and Rule 1.7(b) would result in an advisory ruling by this Court.

The issue of a petitioner seeking an advisory opinion through a petition for a writ of prohibition was addressed in *Dougan v. Gray*, 884 S.W.2d 239 (Ark. 1994). In *Dougan*, an attorney filed a petition for a writ of prohibition with the Arkansas Supreme Court, seeking to prevent a probate court from holding him in contempt.[11] The probate court had ruled that if the attorney did not return an adoptive child to the jurisdiction of the court, contempt proceedings would be invoked against him. The Court in *Dougan* rejected the petition for a writ of prohibition on the grounds that it sought an advisory opinion:

---

[11]Other issues and parties were involved in the case.

Dougan, in one of his counts, petitions us to issue a writ of prohibition to prevent the probate court from holding him in contempt. The record shows that the probate court has not cited Dougan for contempt, and we do not know whether the probate court will cite him for contempt. It is well established that this court does not give advisory opinions, or answer academic questions. Thus, we do not reach the merits of the count.

*Dougan*, 884 S.W.2d at 242 (internal citations omitted).

A ruling similar to that of *Dougan* was made in *Hericks v. Hogan*, 502 F.2d 795 (6th Cir. 1974). In *Hericks,* the plaintiff was injured while employed by the defendant railroad company. The plaintiff filed an action against the defendant in federal court under the Federal Employers' Liability Act. During discovery in the case, the defendant sought to have private interviews with certain physicians who treated the plaintiff. The plaintiff objected and threatened to sue any doctor who spoke privately with the defendant. The trial court drafted a proposed order that would require the plaintiff to allow the doctors to speak with the defendant privately. However, the proposed order was not filed, by agreement between the parties and the court, pending the plaintiff's petition for a writ of prohibition. The Sixth Circuit refused to address the merits of the petition as follows:

It seems apparent from the extensive attention which has been directed to the issue attempted to be presented to this Court, both in the District Court and here, that the present proceeding is one agreed upon below, tacitly if not expressly, as designed to elicit an advisory opinion. We decline the invitation to resolve an issue not properly before us.

We express no opinion concerning the "Proposed Order"

14

> other than to determine that its existence, and notation thereof on the docket of the District Court, does not clothe this Court with jurisdiction to entertain an interlocutory appeal not certified to us pursuant to 28 U.S.C. § 1292(b) or otherwise, and the Petition For Writ of Prohibition is denied.

*Hericks*, 502 F.2d at 796-97 (internal citations omitted). *See also Matter of L. N.*, 617 P.2d 239, 240 (Okla. Crim. App. 1980) (declining writ of prohibition because it "fails to allege facts sufficient to invoke the jurisdiction of this Court insofar as the request is not for relief but, in fact, for an advisory opinion").

In view of the foregoing, we decline to address the merits of ODC's determination regarding the application of Rule 8.4(d) and Rule 1.7(b) to any criminal prosecutorial litigation the Attorney General contemplated, because to do so would result in an advisory opinion. ODC has not initiated any investigation or complaint against the Attorney General based upon its informal advisory opinion. Thus, we "will not decide abstract issues where there is no controversy." *State v. Whittaker*, 221 W. Va. 117, 133, 650 S.E.2d 216, 232 (2007). "Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes[.]" Syl. pt. 2, in part, *Harshbarger v. Gainer*, 184 W. Va. 656, 403 S.E.2d 399 (1991). *See also State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W. Va. 525, 533 n.13, 514 S.E.2d 176, 184 n.13 ("As we frequently have said before, this Court cannot issue an advisory opinion with respect to a hypothetical controversy. . . . Thus, we conclude that we cannot entertain the petitioners' request for a writ of prohibition.");

15

*Farley v. Graney*, 146 W. Va. 22, 29-30, 119 S.E.2d 833, 838 (1960) ("[C]ourts will not . . . adjudicate rights which are merely contingent or dependent upon contingent events, as distinguished from actual controversies . . . . Nor will courts resolve mere academic disputes or moot questions or render mere advisory opinions which are unrelated to actual controversies." (citations omitted)).

**3. Summary.** We have determined that the Attorney General lacked standing to prosecute this petition for a writ of prohibition, and that resolution of the merits of the petition would result in an advisory opinion by this Court. Even though we have determined that resolving the application of Rule 8.4(d) and Rule 1.7(b) is not properly before this Court on a writ of prohibition, we do believe that an important issue was presented by the parties regarding whether the Attorney General has criminal prosecutorial authority under the circumstances he presented to ODC. We believe that resolution of this singular issue has immense importance to our criminal justice system. Consequently, we find it necessary to address this collateral matter.

Before we begin, we wish to make clear that we have precedent for addressing an important collateral issue in a writ of prohibition proceeding that was not properly before this Court. For example, in *State ex rel. Foster v. Luff*, 164 W. Va. 413, 264 S.E.2d 477 (1980), the defendant filed a petition for a writ of prohibition and mandamus, alleging that

16

the trial judge abused his discretion in failing to authorize adequate funds for him to retain experts. We determined that the matter was not properly before this Court because the trial court's order was an interlocutory order. However, because no guidelines were in place for trial courts to follow in assessing a motion for funds for experts in criminal cases, we determined it was necessary to address this collateral procedural issue, but not the merits of the petition. We stated in *Foster*,

> [f]inally, it should be stressed that while we have accepted this issue under our original jurisdiction powers, this was done in order to resolve a substantial issue of considerable importance in the trial of criminal cases. As we stated in *State v. Milam*, W. Va., 260 S.E.2d 295, 301 (1979), in regard to *in camera* hearings on the voluntariness of a confession, where "the trial court exercises a fact-finding function . . . his decision is interlocutory and therefore not appealable nor controllable by a writ of prohibition."

*Foster*, 164 W. Va. at 419, 264 S.E.2d at 481. The decision in *Foster* went on to issue a moulded writ requiring the trial court to apply the new guidelines for conducting a good cause hearing in determining whether the defendant was entitled to the money he sought for experts.

The instant case presents, as a collateral matter, a substantial issue of considerable importance in the trial of criminal cases in this State. That issue is whether the Attorney General has authority to prosecute criminal cases in the manner he proposed. Two issues are at the heart of this question: (1) whether county prosecutors have authority to

17

appoint the Attorney General to prosecute criminal cases and (2) whether the Attorney General has common law authority to prosecute criminal cases. We address both issues separately.

### B. County Prosecutors Do Not Have Authority to Appoint the Attorney General to Prosecute Criminal Cases

As previously stated, the Attorney General received a letter from the Preston County prosecutor asking him to provide direct assistance in prosecuting criminal cases. The letter indicated that the prosecutor had a backlog of criminal cases and needed assistance in prosecuting them.[12] The Attorney General contends that under W. Va. Code § 7-7-8 (1987) (Repl. Vol. 2010) county prosecutors have authority to appoint him to prosecute crimes as a special prosecutor.

Resolving this issue requires this Court to ascertain the intent of W. Va. Code § 7-7-8. We previously have held that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). In examining statutory language generally, words are given their common usage, and "[c]ourts are not free to read into the language what is not there, but rather should apply the statute as written." *State ex*

---

[12]The Amicus points out that the issue of backlogs in criminal cases is not novel to counties. The Amicus suggests that the remedy for this problem is to seek additional funding from county commissions in order to hire additional assistant prosecutors.

*rel. Frazier v. Meadows*, 193 W. Va. 20, 24, 454 S.E.2d 65, 69 (1994). We further have held that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). On the other hand, when the statutory language is not clear, it must be construed. As we said in Syllabus point 1 of *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992), "[a] statute that is ambiguous must be construed before it can be applied." A statute is ambiguous if it "can be read by reasonable persons to have different meanings. . . ." *Lawson v. County Comm'n of Mercer Cnty.*, 199 W. Va. 77, 81, 483 S.E.2d 77, 81 (1996). Thus, "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949).

Guidance in the construction of ambiguous statutes may be found in related statutory provisions. We have held that "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. pt. 3, *Smith*, 159 W. Va. 108, 219 S.E.2d 361. The *in pari materia* rule of statutory construction applies only when a statute is ambiguous. We

19

have held that "[t]he rule that statutes which relate to the same subject should be read and construed together is a rule of statutory construction and does not apply to a statutory provision which is clear and unambiguous." Syl. pt. 1, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). Finally, we are guided by the general process and principles of statutory construction embodied in Syllabus point 5 of *State v. Snyder*, 64 W. Va. 659, 63 S.E. 385 (1908):

> A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

The general authority of county prosecutors to appoint assistant prosecutors is set out under W. Va. Code § 7-7-8. This statute provides, in relevant part:

> The prosecuting attorney of each county may, in accordance with and limited by the provisions of section seven [§ 7-7-7] of this article, appoint practicing attorneys to assist him in the discharge of his official duties during his term of office. Any attorney so appointed shall be classified as an assistant prosecuting attorney and shall take the same oath and may perform the same duties as his principal. Each assistant shall serve at the will and pleasure of his principal and may be removed from office by the circuit court of the county in which he is appointed for any cause for which his principal might be removed.

20

This statute, read in isolation, authorizes county prosecutors to "appoint practicing attorneys to assist him in the discharge of his official duties during his term of office." This isolated language could render the statute ambiguous as to the scope of a prosecutor's appointment powers. The Attorney General appears to have seized upon this isolated language to argue that this provision permits prosecutors to "appoint one or more deputy or assistant attorneys general as special assistant prosecuting attorneys to assist him with 'both prosecutions and investigations.'" The Attorney General also contends that "these attorneys would remain employed and paid by the Office of the Attorney General."

Assuming that the isolated language cited above is ambiguous, we do not believe that the Legislature intended to grant prosecutors the authority under W. Va. Code § 7-7-8 to appoint the Attorney General as a special prosecutor, for several reasons.

To begin, by its own terms, W. Va. Code § 7-7-8 cannot be read in isolation. The statute expressly states that the appointment power granted by it is subject to the requirements of W. Va. Code § 7-7-7 (2011) (Supp. 2014). The latter statute expressly requires county commissions to consent to the appointment of assistant prosecutors. It is provided in W. Va. Code § 7-7-7(a), in relevant part, that

> [t]he county clerk, circuit clerk, sheriff, county assessor and *prosecuting attorney, by and with the advice and consent of the county commission*, may appoint and employ, to assist them in the discharge of their official duties for and during their

21

respective terms of office, assistants, deputies and employees.

(Emphasis added). *See also Haney v. County Comm'n of Preston Cnty*., 212 W. Va. 824, 830, 575 S.E.2d 434, 440 (2002) ("County Commission employees include employees of the various elected county officials including the county clerk, circuit clerk, county assessor, and prosecuting attorney. Pursuant to W. Va. Code § 7-7-7 (2000), these elected county officials hire employees 'by and with the advice and consent of the county commission[.]'"). We have recognized that the intent of W. Va. Code § 7-7-7(a) "was for the county [commission] initially to confirm or refuse to confirm a [prosecutor's] appointees as part of our system of checks and balances. Without that authority, the county [commission] cannot effectively discharge its overall responsibilities in governing the county." *State ex rel. Dingess v. Scaggs*, 156 W. Va. 588, 590, 195 S.E.2d 724, 725 (1973). In the context of the application of this statute to county sheriffs we have held:

> The plain language of W. Va. Code § 7-7-7 (1982) (Repl. Vol. 1993) permits a sheriff to appoint or employ individuals to assist him/her in the performance of his/her official duties only after he/she has obtained the advice and consent of the county commission to such appointment or employment.

Syl. pt. 4, *Webster Cnty. Comm'n v. Clayton*, 206 W. Va. 107, 522 S.E.2d 201 (1999). *See also* Syl. pt. 8, in part, *Harrison Cnty. Comm'n v. Harrison Cnty. Assessor*, 222 W. Va. 25, 658 S.E.2d 555 (2008) ("When a county assessor seeks to hire an employee to perform duties other than assessing and appraising duties, the assessor is required to first obtain the advice and consent of the county commission pursuant to W. Va. Code § 7-7-7 (2000) (Repl. Vol.

22

2006).").  Moreover, an assistant prosecutor appointed under W. Va. Code § 7-7-7 is considered an employee of the prosecutor and the county, and is paid by the county.  *See Clayton*, 206 W. Va. at 113, 522 S.E.2d at 207 ("[W]hile the Sheriff and the Commission are joint employers of those individuals appointed or employed by the Sheriff, it is the Commission who retains the ultimate responsibility for the compensation of these persons[.]").  *See also Fury v. Wood Cnty. Court*, 608 F. Supp. 198, 199 (S.D.W. Va. 1985) ("The statute controlling this issue, W. Va. Code § 7-7-7, makes it clear that as a general proposition the County Commission and the individual elected county officials are joint employers of those employees in the various county offices.").  In sum, and we so hold, in the absence of a statute indicating otherwise, a prosecutor's appointment of assistants under W. Va. Code § 7-7-8 (1987) (Repl. Vol. 2010) and W. Va. Code § 7-7-7 (2011) (Supp. 2014) is generally limited to that of appointing attorneys as employees of the prosecutor and county commission.

The Attorney General argues that the decision in *State v. Angell*, 216 W. Va. 626, 609 S.E.2d 887 (2004), is authority for prosecutors to appoint him as a special prosecutor.  We disagree.

In *Angell*, the defendant was indicted for workers' compensation fraud by a Kanawha County grand jury.  The attorneys prosecuting the defendant were attorneys

employed by the Workers' Compensation Commission ("WCC"). The WCC attorneys had been appointed as special prosecutors by the county prosecutor. The defendant filed a motion to dismiss the indictment on the grounds that the appointment of the special prosecutors violated due process. The trial court dismissed the indictment. The State filed a petition for a writ of prohibition to prevent enforcement of the order barring the special prosecutors from participating in the prosecution.[13] We determined that due process was not violated as a result of prosecution by the special prosecutors. The opinion also made clear that, even though the special prosecutors were employees of WCC, their appointment was confirmed by the county commission. We crystalized this arrangement in Syllabus point 2 of *Angell* as follows:

> The appointment by county prosecuting attorneys, pursuant to the provisions of West Virginia Code § 7-7-8 (1987) (Repl. Vol. 2003), of attorneys employed by the Workers' Compensation Commission to serve as assistant prosecutors for prosecution of workers' compensation fraud and abuse cases does not of itself violate due process principles.

216 W. Va. 626, 609 S.E.2d 887.

What is important to understand about the resolution reached in *Angell* is the Court's concern with "the method by which WCC proceeds with the prosecution of cases involving criminal fraud perpetrated against the WCC fund." *Angell*, 216 W. Va. at 630, 609 S.E.2d at 891. This concern was attributed to the fact that the Legislature created a fraud and

---

[13]The State also filed an appeal. This Court determined the State did not have the authority to appeal.

abuse crime unit within the workers' compensation system. The fraud and abuse unit was

expressly given prosecutorial authority under W. Va. Code § 23-1-1b(g)(22)(B)(iv) (2005)

(Repl. Vol. 2010). This provision reads, in part, as follows:

> The fraud and abuse unit, in cases of criminal fraud, has
> the authority to review and prosecute those cases for violations
> of sections twenty-four-e [§ 61-3-24e], twenty-four-f [§ 61-3-
> 24f], twenty-four-g [§ 61-3-24g] and twenty-four-h [§ 61-3-24h],
> article three, chapter sixty-one of this code, as well as any other
> criminal statutes that may be applicable.[14]

*Id.* The problem the Legislature created when it clothed the WCC fraud and abuse unit

attorneys with prosecutorial authority is that it failed to set out a mechanism by which the

attorneys could lawfully act as prosecutors. This failure was implicitly recognized by the

Legislature in W. Va. Code § 23-1-1b(g)(22)(F) as follows:

> In the event that a final judicial decision adjudges that the
> statewide prosecutorial powers vested by this subdivision in the

---

[14]The full text of W. Va. Code § 23-1-1b(g)(22)(B)(iv) (2005) (Repl. Vol.
2010) reads as follows:

> The fraud and abuse unit, in cases of criminal fraud, has
> the authority to review and prosecute those cases for violations
> of sections  twenty-four-e [§ 61-3-24e], twenty-four-f [§ 61-3-
> 24f], twenty-four-g [§ 61-3-24g] and twenty-four-h [§ 61-3-24h]
> article three, chapter sixty-one of this code, as well as any other
> criminal statutes that may be applicable. In addition the fraud
> and abuse unit not only has the authority to prosecute and refer
> cases involving criminal fraud to appropriate state authorities for
> prosecution, but it also has the authority, and is encouraged, to
> cooperate with the appropriate federal authorities for review and
> possible prosecution, by either state or federal agencies, of cases
> involving criminal fraud concerning the Workers'
> Compensation System in West Virginia[.]

25

> fraud and abuse unit may only be exercised by a public official
> other than an employee of the fraud and abuse unit, then to that
> extent the provisions of this subdivision vesting statewide
> prosecutorial power shall thenceforth be of no force and effect[.]

The decision in *Angell* recognized that WCC, the Kanawha County prosecutor, and the county commission worked out an arrangement so that the prosecutorial authority authorized in W. Va. Code § 23-1-1b(g)(22)(B)(iv) could be carried out. Ultimately, *Angell* found that no "due process violation" occurred because of the prosecutorial arrangement made by the WCC, the Kanawha County prosecutor, and the county commission.

In the instant proceeding, the Attorney General cannot rely on *Angell* as authority for allowing prosecutors to empower him with general prosecutorial authority. The prosecutorial authority recognized in *Angell* was based upon the Legislature granting WCC's fraud and abuse attorneys "specific" and limited prosecutorial powers.

We also find that prosecutors do not have authority to give the Attorney General unlimited prosecutorial authority because the Legislature has specifically determined under what circumstances prosecutors may seek appointment of the Attorney General to prosecute criminal offenses. The Legislature has given the Attorney General limited prosecutorial authority under W. Va. Code § 5-3-2 (1987) (Repl. Vol. 2013) as follows:

> [H]e [the Attorney General] shall, when requested by the
> prosecuting attorney of a county wherein a state institution of
> correction is located, provide attorneys for appointment as special

26

prosecuting attorneys to assist the prosecuting attorney of said county in the prosecution of criminal proceedings when, in the opinion of the circuit judge of said county, or a justice of the West Virginia Supreme Court of Appeals, extraordinary circumstances exist at said institution which render the financial resources of the office of the prosecuting attorney inadequate to prosecute said cases.

Under this statute, the Legislature has specifically authorized prosecutors, in counties with state correctional institutions, to appoint special prosecutors from the Attorney General's office.[15] The appointment authority granted to prosecutors under the statute cannot be invoked unless a circuit court judge or Justice from this Court find that "extraordinary circumstances" exist at a state correctional institution, and the prosecutor's office cannot fully prosecute cases because of budget constraints.[16] Applying the rule of statutory construction *expressio unius*

---

[15]There is a provision in W. Va. Code § 5-3-2 (1987) (Repl. Vol. 2013) that suggests the Governor may appoint the Attorney General to prosecute criminal proceedings. The relevant provision of the statute provides that the Attorney General "shall appear *in any cause* in which the state is interested that is pending in any other court in the state, on the *written request of the governor*, and when such appearance is entered he shall take charge of and have control of such cause." *Id*. (emphasis added). Commentators have suggested that "[t]his Code provision permits the governor to place the attorney general in charge of any criminal prosecution with which the state is interested. The provision does not state, however, that the attorney general may sua sponte intervene in any trial level criminal prosecution." Franklin D. Cleckley and Louis J. Palmer, Jr., *Introduction to the West Virginia Criminal Justice System and Its Laws* 229 (1994). Similar language appearing in the laws of other jurisdictions has been interpreted as allowing the governor to appoint the attorney general to prosecute criminal cases. *See, e.g*., *Westover v. State*, 185 P.2d 315, 318 (Ariz. 1947); *State v. Dawson*, 119 P. 360, 363 (Kan. 1911); *State ex rel. Cordray v. Marshall*, 915 N.E.2d 633, 637 (Ohio 2009). Insofar as this specific provision is not before us, we need not decide its meaning.

[16]In addition to the prosecutorial authority given to the Attorney General under W. Va. Code § 5-3-2, the Legislature has authorized the Attorney General to conduct

(continued...)

*est exclusio alterius* (the expression of one thing is the exclusion of another), it becomes obvious that if the Legislature had intended for prosecutors to have absolute discretionary authority to appoint the Attorney General to assist in prosecuting crimes in general, there would have been no need for setting out the limited appointment authority under W. Va. Code § 5-3-2.[17] *See* Syl. pt. 1, *State ex rel. Battle v. Hereford*, 148 W. Va. 97, 133 S.E.2d 86 (1963)

---

[16](...continued) criminal prosecutions for violations of law in other limited areas. *See* W. Va. Code § 5-1-26 (1974) (Repl. Vol. 2013) (violation of proclamation declaring the existence of a fuel emergency); W. Va. Code § 16-12-6 (1994) (Repl. Vol. 2011) (violation of sewers and sewage treatment plant laws); W. Va. Code § 19-12D-11 (1976) (Repl. Vol. 2007) (violation of noxious weed laws); W. Va. Code § 19-16A-25 (1990) (Repl. Vol. 2007) (violation of pesticide control laws); W. Va. Code § 20-7-6 (1961) (Repl. Vol. 2013) (violation of natural resources laws); W. Va. Code § 21-3-14 (1937) (Repl. Vol. 2013) (violation of employee safety and welfare laws); W. Va. Code § 21A-10-13 (1936) (Repl. Vol. 2013) (violation of unemployment compensation laws); W. Va. Code § 22-5-6 (1999) (Repl. Vol. 2014) (violation of air pollution laws); W. Va. Code § 22-15-15 (2002) (Repl. Vol. 2014) (violation of solid waste management laws); W. Va. Code § 22-14-14 (2002) (Repl. Vol. 2014) (violation of dam control laws); W. Va. Code § 22-18-15 (1994) (Repl. Vol. 2014) (violation of hazardous waste management laws). Although we make reference to these statutes, we make no determination in this opinion regarding the validity of the prosecutorial authority granted in the statutes.

[17]The Attorney General does have authority to provide advice to prosecutors on criminal matters. Under W. Va. Code § 5-3-2, the Legislature has expressly provided that the Attorney General "may consult with and advise the several prosecuting attorneys in matters relating to the official duties of their office[.]" This statute also permits the Attorney General to appear in criminal cases "pending in the Supreme Court of Appeals, or in any federal court, in which the state is interested." W. Va. Code § 5-3-2. Moreover, under W. Va. Code § 7-4-1 (1971) (Repl. Vol. 2010), the Attorney General is authorized to seek the assistance of county prosecutors as follows:

> It shall be the further duty of the prosecuting attorney, when requested by the attorney general, to perform or to assist the attorney general in performing, in the county in which he is

(continued...)

("A statute which provides for a thing to be done in a particular manner or by a prescribed person or tribunal implies that it shall not be done otherwise or by a different person or tribunal; and the maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies to such statute.").

Consequently, we now hold that in the absence of a statute indicating otherwise, county prosecutors do not have authority under W. Va. Code § 7-7-8 (1987) (Repl. Vol. 2010) to appoint the Attorney General or any member of the Attorney General's office as a special prosecutor.[18]

---

[17](...continued)
elected, any legal duties required to be performed by the attorney general, and which are not inconsistent with the duties of the prosecuting attorney as the legal representative of such county. It shall also be the duty of the prosecuting attorney, when requested by the attorney general, to perform or to assist the attorney general in performing, any legal duties required to be performed by the attorney general, in any county other than that in which such prosecuting attorney is elected, and for the performance of any such duties in any county other than that in which such prosecuting attorney is elected he shall be paid his actual expenses.

[18]We also note that the Legislature created a general procedure for appointing special prosecutors through the West Virginia Prosecuting Attorneys Institute under W. Va. Code § 7-4-6 (2009) (Repl. Vol. 2010). Under this statute, the Institute is empowered to appoint special prosecutors in certain situations. The following is provided by W. Va. Code § 7-4-6(e):

Each prosecuting attorney is subject to appointment by the institute to serve as a special prosecuting attorney in any county where the prosecutor for that county or his or her office

(continued...)

## C. The Attorney General's Common Law Authority to Prosecute Criminal Cases Was Abolished by the Constitution and Statute

The Attorney General has argued that he has common law authority to prosecute criminal cases based upon this Court's decision in *State ex rel. Discover Financial Services, Inc. v. Nibert*, 231 W. Va. 227, 744 S.E.2d 625 (2013). In Syllabus point 3 of *Nibert* we held:

> The Office of Attorney General retains inherent common law powers, when not expressly restricted or limited by statute. The extent of those powers is to be determined on a case-by-case basis. Insofar as the decision in *Manchin v. Browning*, 170 W. Va. 779, 296 S.E.2d 909 (1982), is inconsistent with this holding, it is expressly overruled.

231 W. Va. 227, 744 S.E.2d 625. The Attorney General's reliance on *Nibert* is misplaced. The decision in *Nibert* was careful to recognize that specific common law powers of the Attorney General can be abolished by law. Consequently, *Nibert* made clear that the extent

---

[18](...continued)
has been disqualified from participating in a particular criminal case, a juvenile delinquency matter or a matter involving child abuse neglect pursuant to chapter forty-nine of this code, or in any matter wherein a special prosecutor previously appointed has failed to take any action thereon within such time as the Executive Director deems unreasonable. . . . The circuit court judge . . . who disqualifies the prosecutor . . . shall seek the appointment by the institute of a special prosecuting attorney to substitute for the disqualified prosecutor.

In addition to the appointment authority under W. Va. Code § 7-4-6, the Legislature has also granted the Institute authority to appoint special prosecutors in other situations. *See* W. Va. Code § 6B-2-9 (2005) (Repl. Vol. 2010) (Ethics Commission under certain circumstances may petition a circuit court for the appointment of a special prosecutor through the Institute); W. Va. Code § 33-41-4(b) (2004) (Repl. Vol. 2011) (Insurance Commissioner under certain circumstances may petition a circuit court for the appointment of a special prosecutor through the Institute).

of the Attorney General's common law powers had to be decided on a case-by-case basis. In

following the teachings of *Nibert,* we will determine if the Attorney General has common law

criminal prosecutorial powers.

We begin by noting that it is without question that the common law recognized

that attorneys general had prosecutorial powers. The common law powers of attorneys

general to prosecute criminal cases has been outlined as follows:

> The attorney general had the power, and it was his duty, among other things, to prosecute all actions necessary for the protection and defense of the property and revenues of the crown, and, by information, to bring certain classes of persons accused of crimes and misdemeanors to trial.

> The common law of England was the law of our colonial government. The attorney general, under the colonial government, received his appointment from the governor of the colony, and exercised his duties under the common law. Later on he was commissioned by the crown. The attorney general, at common law, was the chief legal representative of the sovereign in the courts, and it was his duty to appear for and prosecute in behalf of the crown any matters, criminal as well as civil. It was said by Blackstone:

> He represents the sovereign, in whose name all criminal process issue, and his power to prosecute all criminal offenses is unquestioned at common law.

> . . . .

> As the powers of the attorney general were not conferred by statute, a grant by statute of the same or other powers would not operate to deprive him of those belonging to the office at common law, unless the statute, either expressly or by reasonable

31

> intendment, forbade the exercise of powers not thus expressly conferred. He must be held, therefore, to have all the powers belonging to the office at common law, and such additional powers as the legislature has seen fit to confer upon him.

*People v. Kramer*, 68 N.Y.S. 383, 386 (1900) (internal quotations and citations omitted). *See Ex parte Young*, 209 U.S. 123, 161, 28 S. Ct. 441, 454, 52 L. Ed. 714 (1908) ("It would seem to be clear that the attorney general, under his power existing at common law, and by virtue of these various statutes, had a general duty imposed upon him, which includes the right and the power to enforce the statutes of the state[.]"); *Fay v. Miller*, 183 F.2d 986, 988 (D.C. Cir. 1950) ("[T]he United States Attorney is vested with broad discretion to protect the public from crime, such discretion being derived both from statutory grant and the authority of the Attorney General at common law."); *Public Defender Agency v. Superior Court, Third Judicial Dist.*, 534 P.2d 947, 950 (Alaska 1975) ("Under the common law, an attorney general is empowered to bring any action which he thinks necessary to protect the public interest, and he possesses the corollary power to make any disposition of the state's litigation which he thinks best. This discretionary control over the legal business of the state, both civil and criminal, includes the initiation, prosecution and disposition of cases."); *Hunt v. Chicago, Horse & Dummy R. Co.*, 13 N.E. 176, 180 (Ill. 1887) ("In England, the office of attorney general has existed from a very early period, and has been vested by the common law with a great variety of duties in the administration of the government."); *State v. Finch*, 280 P. 910, 911-12 (Kan. 1929) ("At common law the attorney-general was the chief representative of the sovereign in the courts, and it was his duty to appear for and prosecute in behalf of the crown

any matters–criminal as well as civil."); *Johnson v. Commonwealth ex rel. Meredith*, 165 S.W.2d 820, 826 (Ky. 1942) ("It is generally recognized that unless denied by statute the attorney general of any state is clothed with all the powers incident to and traditionally belonging to his office. . . . A majority of the courts hold that he has all common law powers and duties except as modified by the constitution or statutes; and, of course, such as may be added by the constitution and statutes."); *State v. Robinson*, 112 N.W. 269, 272 (Minn. 1907) ("The office of Attorney General has existed from an early period, both in England and in this country, and is vested by the common law with a great variety of duties in the administration of the government."); *State v. Young*, 170 P. 947, 948 (Mont. 1918) ("It is the general consensus of opinion that in practically every state of this Union whose basis of jurisprudence is the common law, the office of Attorney General, as it existed in England, was adopted as a part of the governmental machinery, and that in the absence of express restrictions, the common-law duties attach themselves to the office so far as they are applicable and in harmony with our system of government."); *State ex rel. Derryberry v. Kerr-McGee Corp.*, 516 P.2d 813, 818 (Okla. 1973) ("At common law the duties of the Attorney General, as chief law officer of the realm were numerous. He was the chief legal advisor of the crown, and was intrusted with the management of all legal affairs and the prosecution of all suits, both civil and criminal in which the crown was interested. He alone, could discontinue a criminal prosecution by entering a nolle prosequi therein."); *State v. Jimenez*, 588 P.2d 707, 709 (Utah 1978) ("At common law the top legal adviser was invested with criminal prosecution

authority, and such authority is deemed to be that of Attorney General in the common law states of this country.").

The above authorities make it clear that the common law provides attorneys general with authority to prosecute criminal cases. However, it is equally clear "that the attorney-general may exercise common-law powers unless the constitution or statute law, either expressly or by reasonable intendment, forbids the exercise thereof." *State v. Finch*, 280 P. 910, 912 (Kan. 1929) (internal quotations and citation omitted). That is, "where a conflict arises between the common law and a statute or constitutional law, the common law must yield." *State v. Robertson*, 886 P.2d 85, 91 (Utah Ct. App. 1994) (internal quotations and citation omitted). As will be seen, in West Virginia the state constitution and accompanying legislation abolished the Attorney General's common law authority to prosecute criminal cases.

As a preliminary matter, we observe that "[q]uestions of constitutional construction are in the main governed by the same general rules applied in statutory construction." Syl. pt. 1, *Winkler v. State Sch. Bldg. Auth.*, 189 W. Va. 748, 434 S.E.2d 420 (1993). Of course, "[t]he object of construction, as applied to written constitutions, is to give effect to the intent of the people in adopting it." Syl. pt. 3, *Diamond v. Parkersburg-Aetna Corp.*, 146 W. Va. 543, 122 S.E.2d 436 (1961). Although this Court is vested with the

authority "to construe, interpret and apply provisions of the Constitution, . . . [we] may not add to, distort or ignore the plain mandates thereof." *State ex rel. Bagley v. Blankenship*, 161 W. Va. 630, 643, 246 S.E.2d 99, 107 (1978). Thus, "[i]f a constitutional provision is clear in its terms, and the intention of the electorate is clearly embraced in the language of the provision itself, this Court must apply and not interpret the provision." Syl. pt 1, *State ex rel. Trent v. Sims*, 138 W. Va. 244, 77 S.E.2d 122 (1953). On the other hand, "if the language of the constitutional provision is ambiguous, then the ordinary principles employed in statutory construction must be applied to ascertain such intent." *State ex rel. Forbes v. Caperton*, 198 W. Va. 474, 480, 481 S.E.2d 780, 786 (1996) (internal quotations and citations omitted).

The political structure of West Virginia has its roots in Virginia. Consequently, Virginia is a starting point for understanding the constitutional and statutory framework of criminal prosecutions in West Virginia. Beginning around 1800, "in Virginia . . . the tenure of the prosecutor's office, both in the county and superiour courts, [was] at the pleasure of those courts respectively." *Ex parte Bouldin*, 33 Va. 639, 641 (1836). The decision in *Bouldin* explains the evolution and erosion of common law prosecutorial authority of the Virginia Attorney General as follows:

> [T]he attorney and solicitor general, in England, were, at all times, appointed and removed at the pleasure of the crown. They held, and still hold, their offices during pleasure, whilst the tenure of judicial office has been placed on a more stable footing. Prosecutions at the distant assizes are frequently conducted by king's counsel appointed for the occasion, and designated,

35

perhaps, by the attorney general. In this country, before the revolution, the attorney general for the colony, held his office, mediately or directly from the king, and at his pleasure. The king's attorneys or prosecutors in the county courts, we have every reason to believe, were recommended by those courts, but appointed by the attorney general, and by him removable at pleasure, being considered merely as his deputies. This state of things continued after the revolution, and after the constitution of 1776 had fixed the tenure of the attorney general's office as one during good behavior. Our laws are, indeed, silent on the subject; but we are informed by a gentleman of this city, that about the year 1787, he was nominated by the county court of *Charles City* as a fit person to fill the office of attorney for that county; and soon afterwards received a letter from the then attorney general, authorizing him to act in that capacity. And we learn from other sources, that such was the practice in similar cases. When the district courts were established in 1788, the law made it the duty of the attorney general to appoint persons to prosecute in such of the courts as he could not attend himself; thus placing the prosecutors in those courts, on the same footing with the prosecutors in the county courts. It was conceded in the argument, that, if these officers were the deputies of the attorney general, they were removable at his pleasure. We think this is sufficiently apparent from the terms of the statute, authorizing the appointment in such courts as he could not attend himself. But it appears more conclusively in the law ascertaining their salaries, which gave to the attorney general a certain salary, and to each of his deputies in the district courts 75 dollars *per annum.* His deputies in the county courts, were paid in a different manner. Such was the situation of these officers, holding at the pleasure of the attorney general and as his deputies, until January 1800, when it was enacted, that attorneys to prosecute in behalf of the commonwealth shall hereafter be appointed in the district and all other inferiour courts of this commonwealth, by an order of such courts respectively.

*Ex parte Bouldin*, 33 Va. at 648-49 (internal quotations and citations omitted). The decision

in *Bouldin* explains how the Virginia Attorney General's office began to lose common law

prosecutorial authority as a result of local county judges appointing attorneys to prosecute criminal cases. Eventually, the Virginia Legislature granted the authority to prosecute criminal cases to elected county prosecutors that were called "attorneys for the Commonwealth." For example, by 1860 it was provided under Virginia Code title 50, chapter 165, § 7 (1860) that "[e]very commissioner of the revenue, sheriff, constable or other officer, shall give information of the violation of any penal law to such attorney [for the Commonwealth], who shall forthwith institute and prosecute all necessary and proper proceedings in such case[.]"[19]

The above authorities make clear that, over sixty years before West Virginia became a state, Virginia had stripped the Attorney General of his common law powers to prosecute criminal offenses.[20] This situation may help explain why the framers of West

---

[19]Under Virginia's constitution in 1860, the attorney for the Commonwealth was a constitutional office. *See* Va. Const. art. 6, § 9 (1860).

[20]Today, the office of Attorney General in Virginia is a constitutional office. *See* Va. Const. art. V, § 15. The Virginia Attorney General's criminal prosecutorial authority has been limited by statute to a few specifically authorized offenses. *See* Va. Code Ann. § 2.2-511(A) ("Unless specifically requested by the Governor to do so, the Attorney General shall have no authority to institute or conduct criminal prosecutions in the circuit courts of the Commonwealth except [for specifically enumerated crimes[.]"). The prosecutor in Virginia is still called "attorney for the Commonwealth." The attorney for the Commonwealth is a constitutional office. *See* Va. Const. art. VII, § 4 ("There shall be elected by the qualified voters of each county . . . an attorney for the Commonwealth[.]"). The attorney for the Commonwealth, not the Attorney General, has general prosecutorial authority. *See* Va. Code § 15.2-1627(B). It has been said that "[w]hether Virginia's Attorney General has powers deriving from the common law is not a settled issue." Michael

(continued...)

Virginia's Constitution chose to place the office of prosecutor in the Constitution, and the determination of the Legislature to place criminal prosecution almost exclusively with county prosecutors.

Article 9, § 1 of the West Virginia Constitution states that "[t]he voters of each county shall elect . . . a prosecuting attorney . . . who shall hold . . . office[] for the term of four years." This constitutional provision does not in and of itself set out the duties of the prosecutor. The authority for setting out the duties of the prosecutor is contained in Article 4, § 8 of the Constitution, which provides that "[t]he legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the . . . powers and compensation of all public offices[.]" Pursuant to its constitutional authority, the Legislature sets out the duties of prosecutors in W. Va. Code § 7-4-1 (1971) (Repl. Vol. 2010), in part, as follows:

> It shall be the duty of the prosecuting attorney to attend to the criminal business of the State in the county in which he is elected and qualified, and when he has information of the violation of any penal law committed within such county, he shall institute and prosecute all necessary and proper proceedings against the offender, and may in such case issue or cause to be issued a summons for any witness he may deem material. Every public officer shall give him information of the violation of any penal law committed within his county.

As a result of the interplay between West Virginia Constitution article 9, § 1 and W. Va. Code

---

[20](...continued)
Signer, *Constitutional Crisis in the Commonwealth: Resolving the Conflict Between Governors and Attorneys General*, 41 U. Rich. L. Rev. 43, 57 (2006) (internal quotations and citation omitted).

§ 7-4-1, we have held that "[t]he prosecuting attorney is the constitutional officer charged with the responsibility of instituting prosecutions and securing convictions on behalf of the State of those who violate the criminal law. He is charged with the duty of prosecuting all crimes[.]" *State ex rel. Skinner v. Dostert*, 166 W. Va. 743, 750, 278 S.E.2d 624, 630 (1981). That is, "[g]enerally speaking, the prosecutor has exclusive authority to prosecute criminal offenses at the trial level in the name of the state." Franklin D. Cleckley and Louis J. Palmer, Jr., *Introduction to the West Virginia Criminal Justice System and Its Laws* 229 (1994).[21]

The issue of whether the Attorney General retains common law authority to prosecute criminal cases is resolved by West Virginia Constitution article 9, § 1 and W. Va. Code § 7-4-1. Pursuant to those laws, the office of Attorney General was stripped of common law prosecutorial authority. This conclusion itself is specifically dictated by the Constitution. It is provided by article VIII, § 13 of the Constitution that,

> [e]xcept as otherwise provided in this article, such parts of the common law, and of the laws of this State as are in force on the effective date of this article and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the Legislature.

We explained the operation of this constitutional provision in *Nibert* as follows:

> We have held that Article VIII, Section 13 of the Constitution of West Virginia authorizes the Legislature to enact statutes that abrogate the common law[.] We equally have

---

[21]We have previously mentioned in this opinion some of the limited areas in which the Legislature permits the Attorney General to prosecute criminal conduct.

recognized that [t]he common law, if not repugnant of the
Constitution of this State, continues as the law of this State
unless it is altered or changed by the Legislature. Thus, under
Article VIII, Section 13, the Legislature can expressly repeal
specific aspects of the Attorney General's inherent common law
powers.

*Nibert*, 231 W. Va. at 249, 744 S.E.2d at 647. As a result of the constitutional creation of the

office of prosecutor, the Legislature empowered that office with all of the powers of criminal

law prosecution. This empowerment repealed the Attorney General's common law authority

to prosecute criminal offenses.

The Attorney General contends that three decisions of this Court have

acknowledged the existence of his common law authority to prosecute criminal cases.[22] The

first case cited by the Attorney General is *State v. Ehrlick*, 65 W. Va. 700, 64 S.E. 935 (1909).

In that case, it appears that a prosecutor filed a petition to enjoin the defendants from engaging

in a horse racing gambling operation. The circuit court granted an injunction. The defendants

appealed on the grounds that the prosecutor did not have authority to seek the injunction in

the name of the state and that only the Attorney General had such authority. This Court noted

that if the matter was criminal, the prosecutor had authority over the matter, but if it was civil,

only the Attorney General could litigate the proceeding. The opinion found that the issue was

---

[22]The Attorney General also cited to judicial decisions from other states
recognizing common law authority in attorneys general to prosecute criminal cases. The
decisions in each of the cases cited by the Attorney General were decided under the unique
laws of each state addressing the matter. The decisions in those states are not controlling and
have no impact on how we resolve the issue under our unique laws.

40

civil.  Therefore, the prosecutor did not have authority over the issue.  In rendering this decision, the opinion provided the following discussion regarding the powers of the prosecutor and the Attorney General:

> The office of Attorney General is of very ancient origin, and its duties and powers were recognized by the common law.  That of prosecuting attorney is of modern creation, it seems, and its powers and duties are given, imposed, and prescribed by statutory law. . . .  As the Constitution and laws of the state make the two offices separate and distinct and vest in the prosecuting attorney certain powers and impose upon him certain duties, it seems clear that the Attorney General cannot strip him of the powers expressly given, nor increase the burdens laid upon him. . . .  The business, once pertaining actually as well as theoretically to the office of Attorney General, has been divided between the two offices for purposes of convenience.  We may say the office of prosecuting attorney has been carved out of that of Attorney General and made an independent office, having exclusive control, to some extent, of business of the state, arising within the county. . . .  There would be no individual responsibility, if the powers of the Attorney General and prosecuting attorney were coextensive and concurrent.  The one would be no more responsible than the other for the nonenforcement of the laws.  Concurrence would produce interference, conflict, and friction in many instances, delaying the disposition of business to the detriment of the state.  We think it plain therefore that, in a practical sense, the two offices are distinct and independent; but all the business does not seem to have been divided.  Part of the civil business of the state in the county seems to have been reserved to the Attorney General. . . . [T]he duties of the prosecuting attorney . . . extends to all the criminal business of the state in his own county.  As to civil business in which the state is interested, he can act, on behalf of the state, only when required by the auditor and under the direction of the latter, or when the duty is enjoined by some statute.  There are many other provisions imposing specific duties, concerning particular matters, but there is no statute giving him power to represent the state generally in respect to its

41

civil business.

*Ehrlick*, 65 W. Va. at 702-03, 64 S.E. at 936-37.

"*Ehrlick* stands for the proposition that the office of attorney general and county prosecutor are independent and distinct within the limits set by statute." Cleckley and Palmer, *West Virginia's Criminal Justice System* 229. We agree with this observation. However, the Attorney General has seized upon the following single sentence in *Ehrlick* to argue that he has common law criminal prosecutorial authority:

> No doubt the Attorney General may assist the prosecuting attorney in the prosecution of such business, or perform it himself, in case of the nonaction of the prosecuting attorney, but he cannot displace that officer.

*Ehrlick*, 65 W. Va. at 703, 64 S.E. at 936. This dicta is of no moment. To the extent that this single passage in *Ehrlic*k can be misinterpreted as recognizing common law prosecutorial powers in the Attorney General, it is disapproved. It is clear from the full discussion in *Ehrlic*k that, absent statutory authority, a prosecutor cannot invade the duties of the Attorney General, and the Attorney General cannot encroach upon the duties of the prosecutor. This fact was crystalized in Syllabus points 1 and 2 of *Ehrlick* as follows:

> 1. The prosecuting attorney of a county has authority, independent of the Attorney General, to institute and prosecute all criminal actions and proceedings, cognizable in the courts of his county, but has no such power or authority, respecting the prosecution of civil proceedings on the part of the state, beyond that expressly conferred by statute.

42

> 2. As the chief law officer of the state, the Attorney General is clothed and charged with all the common-law powers and duties pertaining to his office, except in so far as they have been limited by statute.

65 W. Va. 700, 64 S.E. 935.

The second case cited by the Attorney General as authority for having common law prosecutorial powers is *Coal & Coke Railway Co. v. Conley*, 67 W. Va. 129, 67 S.E. 613 (1910). In *Conley*, the plaintiff railroad company filed a petition seeking to enjoin the Attorney General and Kanawha County prosecutor from taking any action against it for failure to comply with a statute that limited certain fees the railroad company could impose. The statute imposed only a monetary penalty for a violation. The railroad company believed the statute was unconstitutional. The petition the railroad company filed was pre-emptive in that no action had been filed against it by the Attorney General or prosecutor. The circuit court found the statute unconstitutional in its entirety and granted relief to the railroad company. An appeal was taken by the Attorney General and prosecutor. On appeal, this Court modified the circuit court's decree so as to make the statute unconstitutional against only the plaintiff.

The Attorney General's reliance on *Conley* for common law prosecutorial powers has no basis. First of all, nowhere in the Court's opinion in *Conley* or the separate opinions filed in the case was there any discussion about common law or statutory duties of either the Attorney General or prosecutor. Additionally, the Court in *Conley* noted that the

43

statute complained of by the railroad company did "not expressly and specifically charge the Attorney General of the state and the prosecuting attorneys of the several counties with the duty of enforcing its provisions, or the prosecution of indictments for its violation." *Conley*, 67 W. Va. at 145, 67 S.E. at 620. Additionally, and most importantly, there was in existence at the time of the case a specific statute that actually gave the Attorney General express authority to litigate matters involving railroad companies. At the time of the litigation, the following was provided in W. Va. Code chapter 120, § 3777 (1882) (Repl. Vol. 1906):

> It shall be the duty of the attorney-general of this State to appear and protect the interests of the citizens of this State in all actions, suits and other proceedings that are now, or shall hereafter be, instituted in any court of record in this State, in favor of or against any railroad company whose road passes through any portion of the territory of this State, whenever such action, suit or proceeding involves the right to assess or collect taxes upon the property, real or personal, of said railroad by any authority in this State authorized to levy taxes, whenever said attorney-general shall be requested by said authority to do so.

The plaintiff brought the Attorney General into the case because of this statute. Finally, even if the above statute had not expressly authorized the Attorney General to become involved in tax litigation, when requested, involving railroad companies, the Attorney General was still a proper party in the case because the taxing statute was civilly enforceable, not criminally enforceable. This point was illustrated through a concurring opinion in the case:

> I would regard the penalties valid and enforceable, and overcharges recoverable by civil action, against a railroad company earning a fair return. As it is, it is civilly enforceable against such companies. And it will be civilly enforceable against this company when its earnings warrant it; but I do not

believe it is penally enforceable.

*Conley*, 67 W. Va. at 207, 67 S.E. at 646-47 (Brannon, J., concurring). Insofar as the statute at issue in *Conley* was civilly enforceable, the Attorney General simply cannot rely upon that case as authority for prosecutorial power under the common law.

The third case relied upon by the Attorney General for common law authority to prosecute criminal cases is *Denham v. Robinson*, 72 W. Va. 243, 77 S.E. 970 (1913). In *Denham,* three defendants were indicted for embezzlement that was discovered by the State Tax Commissioner. At some point during the litigation, the prosecutor moved the trial court to dismiss the charges. The motion was made by the prosecutor with "the advice and consent of the Attorney General[.]" *Denham*, 72 W. Va. at 245, 77 S.E. at 971. The trial court denied the motion. The defendants filed a petition for a writ of prohibition with this Court to prevent enforcement of the trial court's order denying the motion to dismiss the charges. One of the issues raised by the defendants was that, at common law, the Attorney General had authority to dismiss a case without the consent of the court. Therefore, the prosecution against them should be dismissed because the Attorney General consented to the dismissal. The opinion in the case rejected the argument by pointing out that criminal prosecutions were the responsibility of the prosecutor:

> But it is argued that the rule of practice obtaining in the trial courts can not control the action of the attorney general, who concurred with the prosecuting attorney; and we are cited many state and federal cases, for the proposition, that the attorney

general is a constitutional officer with few defined powers and that by the federal and state constitutions the mantle of the attorney general of England must be deemed to have fallen upon the office of attorney generals of all the American states, when uncontrolled by the organic law or some legislative enactment. . . . We can not accede to the proposition in its entirety. So far as the attorney general may undertake to exercise or control the powers and duties of prosecuting attorneys we think he is limited by the same rules of practice that control them. The powers and duties of prosecuting attorneys are generally defined by section 6, chapter 120, Code 1906, and as was said by Judge Poffenbarger in *State v. Ehrlick*, supra: "We may say the office of prosecuting attorney has been carved out of that of attorney general and made an independent office. . . ." We are of opinion, therefore, that the nolle prosequi attempted in this case derived no additional force, because concurred in or assented to by the attorney general.

*Denham*, 72 W. Va. at 249-50, 77 S.E. at 972-73. The opinion in *Denham* did not explain why the prosecutor erroneously believed the Attorney General's consent was necessary before seeking to dismiss the charges. However, based upon the analysis in the opinion, it is clear that the Attorney General was brought into the case because the applicable statute did not state specifically what entity was charged with enforcing it. To make this determination, the opinion examined the appropriate laws in order to make a determination that the Attorney General had no legal role in the prosecution.

In its examination of the applicable statute, *Denham* found that prosecution of the defendants had to be carried out by the "proper legal authority of the taxing body." *Denham*, 72 W. Va. at 250, 77 S.E. at 973. The statute, however, did not define who was the

46

"proper legal authority of the taxing body." The opinion looked at the statutes creating the authority of prosecutors and the Attorney General in order to determine which office was responsible for prosecuting the defendants. The opinion concluded from its examination the following:

> Who is the legal authority of the taxing body of the county? Is he not the prosecuting attorney, under chapter 120, Code 1906? Section 6 of that chapter, we think, makes him so. Section 5 of the same chapter imposes upon the attorney general none of the specific duties imposed upon the prosecuting attorney by the sixth section.

*Denham*, 72 W. Va. at 250, 77 S.E. at 973. The opinion deduced that the only "proper legal authority of the taxing body," for prosecution purposes under the statute, was the prosecutor, not the Attorney General.[23] Thus, it is clear to this Court that *Denham* found the Attorney General was not a proper party in the litigation. Consequently, in the instant case, the Attorney General cannot rely upon *Denham* as authority for recognizing common law prosecutorial powers in the Attorney General.

Therefore, we now hold that as a result of the ratification of West Virginia Constitution article 9, § 1 by the people of this State and the Legislature's enactment of W. Va. Code § 7-4-1 (1971) (Repl. Vol. 2010), the common law criminal prosecutorial

---

[23]The statute added further confusion by stating that failure on the part of the "proper legal authority of the taxing body" to prosecute "shall give to the chief inspector the right to institute the necessary proceedings or to participate therein, and to prosecute the same in any of the courts of the state, to a final conclusion." W. Va. Code ch. 10B, § 240a7 (1908) (Supp. 1909).

authority of the Attorney General was abolished.[24]

## IV.

## CONCLUSION

In this proceeding, we have determined that the Attorney General lacked standing to have this Court determine the enforceability of an informal advisory opinion issued by ODC. We also have determined that this Court could not address the merits of the informal advisory opinion because to do so would result in this Court issuing an advisory opinion. As a result of a collateral issue being raised in this proceeding, regarding the authority of the Attorney General to prosecute criminal offenses, we took the extraordinary measure of addressing this issue in this opinion because of its widespread implication to our criminal justice system. In this regard, we have determined that county prosecutors do not have authority under W. Va. Code § 7-7-8 (1987) (Repl. Vol. 2010) to appoint the Attorney General as a special prosecutor. We further conclude that under West Virginia Constitution article 9, § 1 and W. Va. Code § 7-4-1 (1971) (Repl. Vol. 2010) the common law criminal prosecutorial authority of the Attorney General was abolished. After resolving the collateral issue raised in this opinion, the writ of prohibition prayed for is denied.

Writ denied.

---

[24]It should be noted that during oral arguments the Attorney General argued that this Court could limit his common law prosecutorial authority to being exercised only when requested by a prosecutor. We cannot resurrect and limit what the constitution and statute have abolished.